# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LANCE KRONBERGER,<br><br>      Plaintiff,<br><br>      v.<br><br>U.S. FISH AND WILDLIFE<br>SERVICE, *et al.*,<br><br>      Defendants. | Case No. 3:24-cv-00122-SLG<br><br>LEAD CASE |
| JOHN RYDEEN,<br><br>      Plaintiff,<br><br>      v.<br><br>U.S. FISH AND WILDLIFE<br>SERVICE, *et al.*,<br><br>      Defendants. | Case No. 3:24-cv-00123-SLG<br><br>CONSOLIDATED |

## <u>DECISION AND ORDER</u>

Before the Court is Plaintiff John Rydeen's Opening Brief at Docket 62 and

Plaintiff Lance Kronberger's Revised Opening Brief at Docket 63.[1]  Defendants

---

[1] On November 25, 2024, the Court consolidated the two cases. Docket 17.  Many of the arguments set forth by each Plaintiff are substantially similar.  For these substantially similar arguments, the Court refers to Mr. Rydeen and Mr. Kronberger collectively as "Plaintiffs."

U.S. Fish and Wildlife Service ("FWS") and U.S. Department of the Interior ("DOI") (collectively, "Defendants") opposed Plaintiffs' briefs at Docket 66, to which Mr. Kronberger replied at Docket 76 and Mr. Rydeen replied at Docket 78.[2] The Alaska Professional Hunters Association ("APHA") filed an amicus curiae brief in support of Mr. Kronberger and Mr. Rydeen.[3] Oral argument was not requested, and was not necessary for the Court's determination.

## BACKGROUND

These consolidated cases challenge a special use permit issued by FWS to Michael Zweng to guide commercial big game hunting in the KOD-25 guide use area within the Kodiak National Wildlife Refuge ("KNWR").[4] The Court first addresses the regulatory background, followed by the factual background.[5]

### I.     Regulatory Background

Big game guide services in the KNWR are permitted and regulated pursuant to 50 C.F.R. § 36.41.[6] The regulation authorizes FWS to award "hunting guide

---

[2] Mr. Rydeen also filed a substantially similar document at Docket 77; for convenience and consistency, the Court refers only to Mr. Rydeen's filing at Docket 78 in this order.

[3] Docket 67-1; Docket 68.

[4] Docket 1 at ¶ 1; *see* Docket 18-7 at 69 (AR 000185).

[5] The Court previously dismissed Plaintiffs' Freedom of Information Act ("FOIA") claims pursuant to the parties' stipulation. Docket 58; Docket 59. It appears that FWS provided Plaintiffs a complete copy of Mr. Zweng's application around the time the parties settled the FOIA claim in 2025. Regional Director Boario's Final Decisions were on March 20, 2024 (Mr. Kronberger) and April 12, 2024 (Mr. Rydeen). *See infra* notes 38-39.

[6] *See* 50 C.F.R. § 36.41(d).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 2 of 89

permits that provide the exclusive right to guide hunts in limited areas such as KOD-25 for meaningful terms, specifically 5 years, extendable to 10 years on good performance."[7]  For competitively awarded permits (that is, when the number of available permits is limited), refuge managers are to issue a "prospectus with invitation to bid system" as "the primary competitive method used for selecting commercial visitor services."[8]  The commercial visitor services prospectus must "identify the selection criteria that the Service will use to evaluate the proposals" and must "include experience and performance in providing the same or similar services as a criterion."[9]  Further, when "evaluating the experience of an applicant," the regulation directs the Service to "specifically consider knowledge of the specific area covered by the prospectus and the nature of the technical skills required to provide quality service to the public."[10]  The regulation further provides that "[a] panel of Service employees who use a scoring process based on the selection criteria will evaluate and rank the applications received in response to a prospectus."[11]  Then, the panel's evaluation and ranking of applications are sent

---

[7] Docket 67-1 at 4-5 (citing 50 C.F.R. § 36.41(e)(10)).

[8] *Id.* § 36.41(e)(1).

[9] *Id.* § 36.41(e)(4).

[10] *Id.* § 36.41(e)(4).

[11] *Id.* § 36.41(e)(5).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 3 of 89

Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 3 of 89

to the refuge manager, who makes the award decision.[12]  "An applicant for a competitively issued permit who is not selected will not receive advance notice of the award decision."[13]

50 C.F.R. § 36.41(i) governs the agency appeal process of the award decision made by an Alaska National Wildlife Refuge ("ANWR") refuge manager: "Any person adversely affected by a refuge manager's decision or order relating to the person's permit, or application for a permit, has the right to have the decision or order reviewed by the regional director."[14]  When appealing to the regional director, appellants are directed to present certain additional information to the regional director.[15]  If a hearing is requested by the applicant, the regional director "will provide a hearing" and "[a]fter consideration of the written materials and oral hearing, and within a reasonable time, the regional director will affirm, reverse, or modify the refuge manager's decision or order and shall set forth in writing the

---

[12] *See id.* § 36.41(e)(1).

[13] *Id.* § 36.41(i)(2).

[14] *Id.* § 36.41(i)(1).

[15] *Id.* § 36.41(i)(3)(i) ("Any statement or documentation, in addition to that included in the initial application, permit or competitive prospectus, which demonstrates that the appellant satisfies the criteria set forth in the document under which the permit application/award was made."); *id.* § 36.41(i)(3)(ii) ("The basis for the permit applicant's disagreement with the decision or order being appealed."); *id.* § 36.41(i)(3)(iii) ("Whether or not the permit applicant requests an informal hearing before the regional director.").

basis for the decision."[16]  "The [regional director's] decision will constitute final agency action."[17]

## II.    Factual Background

On August 20, 2021, FWS issued the "Prospectus and Invitation for Proposals to Conduct Commercial Big Game Guide Services within Areas of the [KNWR]" (the "Prospectus"), inviting proposals for big game guides in the KNWR, including one exclusive guide permit for KOD-25.[18]

On April 28, 2022, FWS staff members Kathey Virgin and Ty Benally contacted the Big Game Guide ranking panel members and provided detailed scoring instructions for panel members to review the permit applications from 163 applicants for 77 guide use areas, including the applications received for KOD-25.[19]  Each panel is to score applications using the scoring sheets provided for Forms A through E from the Prospectus.[20]  Upon completion of the final score sheets, Ms. Virgin and Mr. Benally would "use the scoring calculator to create formal score summary for each application" for the refuge manager's review.[21]

---

[16] *Id.* § 36.41(i)(4).

[17] *Id.* § 36.41(i)(4).

[18] Docket 18-7 at 1-68 (AR 000117-184) (2021 Prospectus); Docket 18-7 at 29 (AR 000145).

[19] Docket 18-8 at 19-21 (AR 001203-05) ("General Information/Resources" Letter).

[20] Docket 18-8 at 19-21 (AR 001203-05).

[21] Docket 18-8 at 21 (AR 001205).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 5 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 5 of 89

FWS had six three-member panels to review the 163 applications.[22] Based on the Court's review of the evaluation scoring sheets, it is unclear from this record whether the same scoring panel evaluated each of the three applications that were determined to be "Best Qualified" for KOD-25.

At some point between May 2022 and August 2022, the panels' evaluation scoring sheets for the three "best qualified" applicants for KOD-25—Mr. Zweng, Mr. Kronberger, and Mr. Rydeen—were referred to KNWR Manager Michael Brady.[23] The scores received by each of those applicants was as follows: Mr. Zweng at 336.67, Mr. Kronberger at 322.67, and Mr. Rydeen at 315.00.[24] Two of the applicants had previous KOD-25 big game guide experience: Mr. Kronberger,

---

[22] Docket 18-8 at 19 (AR 001203) ("Anchorage has four 3-person panels and two weeks to score up to 36 Proposal (applications) per panel, and Fairbanks has two 3-person panels and has one week to score 18-19 Proposal (applications).").

[23] Docket 18-8 at 59 (AR 001243) ("Based on the results of our evaluation the Panel finds that Mr. Michael Zweng, Mr. Lance Kronberger, and Mr. John Rydeen are the 'Best Qualified' applicants and should be considered for final selection for the permit to provide big game guide services in guide use area KOD-25.").

[24] Docket 18-8 at 59 (AR 001243) ("Referral of Big Game Guide Proposals for Kodiak Refuge Guide Use Area KOD-25"); *see also* Docket 18-8 at 23-36 (AR 001207-20) *(*Mr. Zweng's evaluation scoring sheets); Docket 18-8 at 37-46 (AR 001221-30) (Mr. Kronberger's evaluation scoring sheets); Docket 18-8 at 47-58 (AR 001231-42) (Mr. Rydeen's evaluation scoring sheets).

The Court notes a discrepancy in the record with respect to whether there were three or four applicants for KOD-25. *See* Docket 18-8 at 59 (AR 001243); *but see* Docket 18-20 at 6 (AR 001982). This order proceeds with the understanding that there were four applicants for KOD-25.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 6 of 89

the incumbent permitholder for KOD-25, and Mr. Rydeen, who served as an assistant guide for Mr. Kronberger while he held the permit.[25]

In August 2022, Manager Brady interviewed the three final KOD-25 applicants.[26] On October 3, 2022, Manager Brady revisited the three proposals.[27] On October 11, 2022, he reread sections of Mr. Zweng's and Mr. Kronberger's applications.[28] On October 22, 2022, Manager Brady awarded the big game guide permit for KOD-25 to Mr. Zweng (the "Brady Decision").[29] Manager Brady's Decision stated his selection was based on his review of the panel scoring, client use data, and interview notes.[30]

---

[25] Docket 67-1 at 4.

[26] On August 16, 2022, Manager Brady interviewed Mr. Zweng. Docket 18-8 at 60 (AR 001244). On August 19, 2022, Manager Brady interviewed Mr. Rydeen. Docket 18-8 at 61 (AR 001245). Also on August 19, 2022, Manager Brady interviewed Mr. Kronberger. Docket 18-8 at 62 (AR 001246). Manager Brady documented their responses and his observations during these three August 2022 interviews in each applicant's interview sheet. Docket 18-8 at 60-62 (AR 001244-46).

[27] Docket 18-9 at 3 (AR 001261).

[28] Docket 18-9 at 3 (AR 001261). Manager Brady's Memorandum also states: "I also had [law enforcement officer] James Reynolds review guides prospectus and no additional information was provided." Docket 18-9 at 3 (AR 001261).

[29] Docket 18-9 at 3-4 (AR 001261-62).

[30] Docket 18-9 at 3 (AR 001261).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 7 of 89
Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 7 of 89

On November 11, 2022, Manager Brady notified Mr. Rydeen and Mr. Kronberger separately that they had not been selected, provided information regarding the appeal process, and the availability of a hearing if requested.[31]

On December 5, 2022, Mr. Rydeen and Mr. Kronberger separately notified Ms. Virgin of each applicant's intent to appeal the Brady Decision to FWS Alaska Regional Director Sara Boario ("Director Boario").[32] Mr. Kronberger's supplement to appeal was submitted on August 18, 2023;[33] Mr. Rydeen's appeal was filed on August 24, 2023.[34]

On August 29, 2023, Director Boario, along with other FWS staff and counsel, held an informal hearing with Mr. Kronberger and his counsel.[35] During the hearing, Mr. Kronberger stated his concerns with FWS's selection process and the Brady Decision.[36] Mr. Rydeen waived his hearing, as permitted under 50 C.F.R. § 36.41(i), and in lieu of a hearing, submitted written testimony.[37]

---

[31] Docket 18-9 at 5-6 (AR 001263-64) (Rydeen Notice); Docket 18-9 at 9-10 (AR 001267-68) (Kronberger Notice).

[32] Docket 18-9 at 14-16 (AR 001272-74). On December 19, 2022, and December 20, 2022, Mr. Rydeen and Mr. Kronberger each sent a Notice of Intent to Appeal Refuge Manager Brady's decision to Director Boario. Docket 18-9 at 69 (AR 001327); Docket 18-9 at 70 (AR 001328).

[33] Docket 18-13 at 1-18 (AR 001520-37).

[34] Docket 18-15 at 1-23 (AR 001595-1617) ("Appeal of Refuge Manager's Decision to Award Guiding Permit for Guide Use Area KOD-25 in Kodiak National Wildlife Refuge").

[35] Docket 18-16 at 39-43 (AR 001722-26).

[36] Docket 18-16 at 39-43 (AR 001722-26).

[37] Docket 18-17 at 7 (AR 001741).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 8 of 89

Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 8 of 89

On March 20, 2024, Director Boario denied Mr. Kronberger's appeal and affirmed "Refuge Manager Mike Brady's selection of Mr. Zweng for a commercial guiding permit" for KOD-25 (the "Kronberger Decision").[38]

On April 12, 2024, Director Boario again upheld the Brady Decision and denied Mr. Rydeen's appeal (the "Rydeen Decision").[39] As she did in the Kronberger Decision, Director Boario provided a statement of findings that responded to each of Mr. Rydeen's appeal points.[40]

This lawsuit and the consolidated case were both initiated on June 7, 2024; Mr. Kronberger filed a Complaint in the lead case, and Mr. Rydeen filed a Complaint in the consolidated case.[41] Each Complaint seeks a declaration that FWS's Final Decision was "arbitrary, capricious, an abuse of discretion or not in accordance with law, that it violates Plaintiff's due process rights, that it is unsupported by substantial evidence in the record, and is unwarranted by the facts" pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* ("APA"); and an order vacating the Final Decision and remanding the matter to

---

[38] Docket 18-20 at 6-17 (AR 001982-93).

[39] Docket 18-20 at 35 (AR 002011).

[40] Docket 18-20 at 25-35 (AR 002001-11). In both the Kronberger Decision and the Rydeen Decision, Director Boario stated: "[T]his decision constitutes final agency action." Docket 18-20 at 15 (AR001991), 33 (AR 002009).

[41] Docket 1; Docket 1 (Case No. 3:24-cv-00123-SLG) (Compl.).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 9 of 89

FWS to award the permit to Plaintiff.[42]  Each Opening Brief requests that (1) "the Court disqualify the application of Mr. Zweng or find that his is not 'best qualified' for consideration, with a decision to be made between Mr. Rydeen and Mr. Kronberger"; or (2) "reverse the award, adjust the scoring and remand with instructions that the [applicants] be re-interviewed and a new decision be issued, with [Director] Boario being disqualified from any further involvement."[43]  APHA asks the Court order to "vacate the permit and remand to FWS to address" a lack of agency reasoning on key issues that APHA maintains hinders meaningful judicial review.[44]

## JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which "confer[s] jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate."[45]

---

[42] Docket 1 at 5, 14; Docket 1 at 4, 26 (Case No. 3:24-cv-00123-SLG) (Compl.).

[43] Docket 62 at 66; *see* Docket 63 at 63-64.

[44] Docket 67-1 at 9 (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.")).

[45] *Califano v. Sanders*, 430 U.S. 99, 105 (1977).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 10 of 89
Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 10 of 89

**LEGAL STANDARD**

Section 706 of the APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] in excess of statutory jurisdiction, authority, or limitations."[46] Agency action is arbitrary and capricious if it:

> relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.[47]

By contrast, an agency action is proper if "the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made."[48]

When an agency action is based on factual conclusions drawn from the administrative record, a reviewing court must determine whether those conclusions are supported by "substantial evidence."[49] "'Substantial evidence' is 'more than a mere scintilla but less than a preponderance.'"[50] A court's review of

---

[46] 5 U.S.C. § 706(2).

[47] *Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1067 (9th Cir. 2018) (quoting *Greater Yellowstone Coal., Inc. v. Servheen*, 665 F.3d 1015, 1023 (9th Cir. 2011)).

[48] *Id.* (quoting *Greater Yellowstone Coal.*, 665 F.3d at 1023).

[49] *Id.* at 1068; *see also Dickinson v. Zurko*, 527 U.S. 150, 163–64 (1999).

[50] *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (quoting *Sandgathe v. Chater*, 108

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 11 of 89
Case 3:24-cv-00122-SLG   Document 84   Filed 03/31/26   Page 11 of 89

an agency's findings under § 706(2) is narrow: "a court is not to substitute its judgment for that of the agency," and such deference is especially appropriate where "the challenged decision implicates substantial agency expertise."[51] This standard is "extremely deferential," requiring a reviewing court to "uphold the [agency's] findings unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result."[52] "Whether agency action is 'not in accordance with law' is a question of statutory interpretation, rather than an assessment of reasonableness in the instant case."[53]

## DISCUSSION

In total, Mr. Kronberger, Mr. Rydeen, and amicus curiae, APHA, appear to make 16 distinct arguments.[54] In their opposition brief, Defendants respond to

---

F.3d 978, 980 (9th Cir. 1996)).

[51] *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983); *Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1194 (9th Cir. 2000).

[52] *Monjaraz-Munoz v. I.N.S.*, 327 F.3d 892, 895 (9th Cir. 2003) (emphasis in original) (quoting *Singh-Kaur v. I.N.S.*, 183 F.3d 1147, 1149–50 (9th Cir. 1999)). The holding in *Loper Bright Enterprises v. Raimondo* is not to the contrary. 603 U.S. 369, 392 (2024) ("Section 706 *does* mandate that judicial review of agency policymaking and factfinding be deferential." (emphasis in original)).

[53] *Singh v. Clinton*, 618 F.3d 1085, 1088 (9th Cir. 2010) (citing *Nw. Env't Advocs. v. EPA*, 537 F.3d 1006, 1014 (9th Cir. 2008)); *see also Ass'n of Vill. Council Presidents v. Nat'l Marine Fisheries Serv.*, Case No. 3:23-cv-00074-SLG, 2025 WL 776638, at *6 (D. Alaska Mar. 11, 2025).

[54] Of the 16 arguments raised by Plaintiffs and amicus curiae, 15 arguments appear to be commonly raised by Mr. Kronberger, Mr. Rydeen, and/or APHA, and one policy argument is raised solely by APHA. The Court finds the following observation by APHA to be particularly persuasive:

> As the State's trade association for hunting guides, APHA knows that very few guides can afford to go to the next level and file a judicial review case after the

most of Plaintiffs' arguments. They also assert that Plaintiffs failed to exhaust their administrative remedies as required by 5 U.S.C. § 704 because Plaintiffs raise five arguments in their opening briefs that they failed to raise before the agency.[55]

## I.    Preliminary Issues

### A.    Exhaustion of remedies

"As a general rule, [courts] will not consider issues not presented before an administrative proceeding at the appropriate time."[56] "[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts."[57]

Defendants first allege Plaintiffs failed to present to the agency their argument that "[Mr.] Zweng's proposal did not meet the standards in the

---

Regional Director denies their first-level appeal. This is probably why only a few of these hunting guide permit award cases have come before this Court over the years, and why the first-level appeal to the Regional Director must be fairly handled. That appeal is all that most guides can afford, and these permit award decisions so vitally impact their livelihoods.

Docket 67-1 at 20.

[55] Docket 66 at 31-32 & n.6 (first citing *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952); and then citing *Appalachian Power Co. vEPA*, 251 F.3d 1026, 1036 (D.C. Cir. 2001)). Neither Plaintiff addresses the exhaustion issue in their two lengthy reply briefs.

[56] *Nat'l Parks & Conservation Ass'n v. Bureau of Land Mgmt.*, 606 F.3d 1058, 1065 (9th Cir. 2009) (quoting *Marathon Oil Co. v. United States*, 807 F.2d 759, 767-68 (9th Cir. 1986)).

[57] *L.A. Tucker Truck Lines, Inc.*, 344 U.S. at 37; *see Dep't of Transp. v. Public Citizen*, 541 U.S. 752, 764-65 (2004) (holding that the respondents forfeited their objections to an Environmental Assessment when they did not raise them in their comments to the agency).

Prospectus."[58] Plaintiffs did not fail to exhaust this argument; both Mr. Kronberger and Mr. Rydeen argued that Mr. Zweng's Forms A through D did not meet Prospectus standards in their administrative appeals and Mr. Kronberger raised this issue at the August 29, 2023, hearing.[59]

The second allegedly waived argument is: "[Mr.] Zweng's application, which discussed caching, violates refuge regulations and policies."[60] Although Plaintiffs did not raise this issue in their administrative appeal, they could not have done so because FWS withheld Mr. Zweng's application and scoring sheets until after this action was initiated in June 2024, despite Mr. Kronberger's and Mr. Rydeen's respective FOIA requests in December 2022 for these documents.[61]

The third allegedly waived argument is that Mr. Zweng's subsequent deviation from his operations plan violated the applicable regulations.[62] This argument was not waived because the deviation was not requested until March

---

[58] Docket 66 at 31-32.

[59] Docket 18-13 at 1-18 (AR 001520-37); Docket 18-15 at 6-10 (AR 001600-03); Docket 18-16 at 40-42 (AR 001723-25).

[60] Docket 66 at 31-32.

[61] *See infra* note 5. *See also* Docket 18-11 at 1 through Docket 18-12 at 55 (AR 001415-1519)*;* Docket 18-13 at 1, 10 (AR 001520, 001529); Docket 18-15 at 1-3, 10-12 (AR 001595-97, 001604-06).

[62] Docket 66 at 31-32.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 14 of 89

22, 2024, which was more than six months after Mr. Rydeen's appeal was filed on August 24, 2023.[63]

The fourth allegedly waived argument challenges FWS's failure to consider all species that may be hunted in KOD-25.[64] This relates to the fact that Mr. Zweng only proposed to guide bear hunts in his application, while the Prospectus called for a proposal to guide bear, goat, and deer hunts.[65] Here again, Plaintiffs did not have Mr. Zweng's application when they filed their administrative appeals and Manager Brady's memorandum did not reference this limitation in Mr. Zweng's proposal, so there is no way that Plaintiffs could have been aware of it at the time of their agency appeal.[66]

The fifth allegedly waived argument is: "FWS cannot exercise enforcement oversight of the spike camps, identified by general location, in [Mr.] Zweng's application."[67] Here again, because Plaintiffs were unable to review Mr. Zweng's application when their appeals were pending before Director Boario, the Court will consider Plaintiffs' arguments objecting to Mr. Zweng's proposed spike camp

---

[63] Docket 18-15 at 1-89 (AR 001595-1683); Docket 31-6 at 2 (AR 002032).

[64] Docket 66 at 31-32.

[65] *Compare* Docket 19-24 at 14-15 (AR 000667-68) (bear hunting); Docket 19-25 at 2-3 (AR 000679-80) (deer and goat hunting) *with* Docket 18-7 at 29 (AR 000145) ("Species available"); *see infra* Section III.F.

[66] *See supra* note 5; Docket 18-9 at 4 (AR 001262) ("2. Experience and knowledge of the GUA, terrain, climate and species hunted").

[67] Docket 66 at 31-32.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 15 of 89

Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 15 of 89

locations.  Moreover, in his agency appeal, Mr. Rydeen does reference, in a footnote, Mr. Zweng's non-exact locations for spike camps in a different application, and Director Boario addressed this issue in her KOD-25 decisions when she stated that FWS staff "confirmed that Mr. Zweng's application contained spike camp locations."[68]

### B.    Disqualification

Plaintiffs assert that Mr. Zweng's application should be disqualified because he did not meet the Prospectus requirements in Forms A through D of his application and thus failed to satisfy the "[a]bility to provide services" and "knowledge of the area" requirements of 50 C.F.R. § 36.41(e).[69]  Mr. Kronberger provides four reasons[70] and Mr. Rydeen provides three reasons[71] why Mr. Zweng's application should be disqualified.

Section VII of the Prospectus provides the basis for disqualification of an applicant: "An applicant who knowingly provides false information *will* be disqualified."[72]  By contrast, "[i]ncomplete proposals *may* be disqualified and/or not

---

[68] Docket 18-15 at 9 n.9 (AR 001603). *See generally* Docket 18-20 at 6-16, 25-35 (AR 001982-1992, 002001-11).

[69] Docket 63 at 21-32; Docket 62 at 15-33.

[70] Docket 63 at 21-32.

[71] Docket 62 at 15-33.

[72] Docket 18-7 at 37 (AR 000153) (emphasis added).

considered."[73]   Thus, because disqualification is discretionary for the agency unless an applicant has knowingly provided false information, the Court would only remand with a direction to disqualify Mr. Zweng if Plaintiffs demonstrate that Mr. Zweng knowingly provided false information in his application that the agency had overlooked, excused, or disregarded.

In a footnote, Mr. Rydeen alleges "Mr. Zweng's application falsely states on Form B – 'Disabled hunting opportunities' that he has 'locations (plural) that we can hunt near the beach' for hunters that are 'not able to climb hills or hike very far[.]'"[74]  Mr. Rydeen maintains this statement is false because Mr. Zweng's maps "hav[e] only one location area that is arguably near a beach."[75]   Mr. Zweng's statement is not false.  According to Mr. Zweng's proposal, for hunters who are "not able to climb hills or hike very far," "we can be dropped by the transporter and only go a short distance" because Mr. Zweng "[has] locations that we can hunt near the beach."[76]  While it is not entirely clear how far from Mr. Zweng's proposed spike camp locations are from the float plane landing zone in one of Mr. Zweng's annotated USGS maps (based on how the map was produced and annotated),[77]

---

[73] Docket 18-7 at 37 (AR 000153) (emphasis added).

[74] Docket 62 at 17 n.8 (citing Docket 19-26 at 20 (AR 000723)); *see also* Docket 62 at 22.

[75] Docket 62 at 17 n.8 (citing Docket 19-25 at 26 (AR 000703)).

[76] Docket 19-26 at 20 (AR 000723).

[77] *See* Docket 19-25 at 24 (AR 000701). This map is reproduced as Exhibit 7 in the accompanying Sealed Addendum.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 17 of 89

Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 17 of 89

another one of Mr. Zweng's annotated USGS maps appears to have two spike camps in close proximity to the coastline.[78]  Nor is Mr. Zweng's failure to provide GPS locations a false statement.  Mr. Zweng was quite candid that he was not providing that information in his application.[79]

Mr. Kronberger also alleges Mr. Zweng made a false statement when he requested the amendment of his application in March 2024: "All locations will be float plane based *as documented in my application.*"[80]  Mr. Kronberger maintains that "[i]n fact, Mr. Zweng's original application did *not* provide for any floatplane flights over or landings within the refuge."[81]  But Mr. Zweng's statement that he would be using float plane based landings is not false.  Under the "Transportation" section of his proposal, Mr. Zweng states that "[t]he primary mode of transportation will be by float plane" and that "[t]his [will be] accomplished by using a Beaver on floats . . . ."[82]

Based on the statements identified by Mr. Rydeen and Mr. Kronberger, mandatory disqualification of Mr. Zweng's proposal is not warranted; the identified

---

[78] *See* Docket 19-25 at 26 (AR 000703). This map is reproduced as Exhibit 8 in the accompanying Sealed Addendum. The southernmost spike camp marked on the map, while in close proximity to the float plane landing area, is not immediately adjacent to the waters of Geese Channel.

[79] *See* Docket 19-24 at 23 (AR 000676).

[80] Docket 63 at 30 (emphasis in original) (citing Docket 31-6 at 2 (AR 002032)).

[81] Docket 63 at 30 (emphasis in original) (citing Docket 19-25 at 24-25 (AR 000701-02)).

[82] Docket 19-25 at 15.

deficiencies in Mr. Zweng's proposal are ones of incompleteness, which "may" warrant disqualification, rather than false statements requiring disqualification.

## II.  Was the Agency Action Arbitrary and Capricious?

### A.  Spike camp locations

Plaintiffs contend "Mr. Zweng failed to meet the prospectus standard" in Form A, the operations plan, because his mobile spike camp proposal did not provide details about the location of his spike camps on marked topographical maps.[83]

Defendants respond that "[n]othing in the Prospectus prohibited applicants from incorporating into their proposals the flexibility to adjust the location of spike camps in response to real time conditions . . . ."[84]

Form A, the "Proposed Operations Plan," is the most heavily weighted part of the application (155 of the total 400 points).[85]  Form A is a narrative description of the proposed commercial hunting operation.[86]  Among other information, the

---

[83] Docket 63 at 21-27; Docket 62 at 16-23. *See also* Docket 76 at 17 ("Failure to identify specific spike camp locations on a USGS map does not meet the Prospectus standard and should disqualify Mr. Zweng or be explained by FWS."); Docket 78 at 5-8.

[84] Docket 66 at 21.

[85] Docket 18-8 at 1-2, 4 (AR 001185-86, 001188). *See also* Docket 76 at 16 n.18, 22 ("Form A, the operations plan, is the single most important criteria for evaluating big game guiding proposals.").

[86] Docket 18-7 at 42 (AR 000158).

Prospectus instructs that "[t]his narrative should address, at a minimum, the type and extent of services, including the following:"[87]

> Number, type, and location of existing or new camps (i.e., tent, tent frame, cabin, boat):
>
>> - Base and spike camps
>>
>> - Camp locations (mark on USGS 1:63,360 scale topographical maps), if located off-refuge include a legal description of the property or mark on a USGS 1:63,360 scale topographical map (use this website https://ngmdb.usgs.gov/topoview/viewer/ to obtain USGS 1:63,360 scale topographical maps and print them on 8.5" x 11" paper)
>>
>> - Habitat type in which each camp is located
>>
>> - Structures, facilities and equipment used or needed at camps (e.g., weatherports, caches, latrines, stoves, chainsaws, etc.)
>>
>> - Water supplies[88]

While the Prospectus directs applicants to include USGS maps, the scoring guidance does not reference the GPS mapping requirement.[89]

In his operations plan in Form A, Mr. Zweng did not provide the GPS coordinates for his spike camps.[90]  Mr. Zweng's application states: "Since I do not

---

[87] Docket 18-7 at 42 (AR 000158); Docket 76 at 21-22.

[88] Docket 18-7 at 42, ¶ 4 (AR 000158).

[89] *See* Docket 18-8 at 4-9 (AR 001188-93).

[90] Docket 19-24 at 23 (AR 000676). *See also* Docket 62 at 16-23; Docket 63 at 22-27.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 20 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 20 of 89

utilize a permanent base camp I cannot indicate an exact camp location on a map, but I have indicated general areas for spike camps."[91]  With his original application, Mr. Zweng included three annotated USGS maps: Two maps with the "general locations" of three spike camp locations marked with large "X"s on the map and float plane approach and landing zones marked with an arrow and a line, respectively;[92] and one map with the "general locations" of aircraft landings on waters outside the refuge marked with arrows and lines.[93]  The two spike camp maps are reproduced as Exhibit 7 and Exhibit 8 in the Sealed Addendum to this order.  Mr. Zweng's application explains that he opted for temporary spike camps that would provide protection from the wind, yet still provide 360 degree views.[94] He emphasized that he specialized in a low impact style of hunting that "is very conducive to the remote area where KOD-25 resides."[95]  While the Brady Decision does not discuss spike camps, the Rydeen Decision does state that Director Boario's staff "confirmed that Mr. Zweng's application contained spike camp locations."[96]

---

[91] Docket 19-24 at 23 (AR 000676); Sealed Addendum Exhibit 3.

[92] *See supra* notes 77-78.

[93] *See* Docket 19-25 at 24 (AR 000701); Docket 19-25 at 25 (AR 000702); Docket 19-25 at 26 (AR 000703).

[94] Docket 19-24 at 24 (AR 000677).

[95] Docket 19-24 at 7 (AR 000660).

[96] Docket 18-9 at 3-4 (AR 001261-62); Docket 18-20 at 31 (AR 002007).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 21 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 21 of 89

By contrast, Mr. Kronberger provides the GPS coordinates of each of his spike camps.[97] His spike camps are also numbered and marked on a USGS map with a very small and precise "x" mark.[98] Similarly, Mr. Rydeen provides the GPS coordinates of each of his spike camps[99] as well as maps that are marked and numbered in a very similar way to Mr. Kronberger's maps.[100]

Defendants respond that Mr. Zweng's proposal complied with Form A's spike camp requirement, as it "described in detail [Mr. Zweng's] use of spike camps, the type of spike camps, his criteria for selecting spike camp[s] as well as maps identifying several spike camp locations, along with aircraft approach roads and landing locations."[101] "The agency was cognizant of this flexibility when it reviewed the proposals and considered this degree of flexibility to be acceptable."[102] Defendants also contend that while spike camp locations are

---

[97] Docket 19-1 at 20 (AR 000204); Sealed Addendum Exhibit 1.

[98] Docket 19-1 at 33 (AR 000217) (Mr. Kronberger's camp locations and access points); Sealed Addendum Exhibit 4. His landing sites map contains the same small "x" marks and a short line to depict the aircraft landing site. Docket 19-1 at 35 (AR 000219) (Mr. Kronberger's landing sites); Sealed Addendum Exhibit 9.

[99] Docket 19-15 at 16-17 (AR 000471-72); Sealed Addendum Exhibit 2.

[100] Docket 19-15 at 18 (AR 000473) (Mr. Rydeen's camps #1-4 locations); Sealed Addendum Exhibit 5; Docket 19-15 at 19 (AR 000474) (Mr. Rydeen's camp #5 location); Sealed Addendum Exhibit 6. *See also* Docket 19-16 at 13 (AR 000488) (Mr. Rydeen's access points and routes for camps #1-4); Sealed Addendum Exhibit 10; Docket 19-16 at 14 (AR 000489) (Mr. Rydeen's access points and routes for camps #5); Sealed Addendum Exhibit 11.

[101] Docket 66 at 21 (citing Docket 19-25 at 24-26 (AR 000701-03)).

[102] Docket 66 at 21-22.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 22 of 89
Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 22 of 89

required information, "[t]here was no requirement to provide GPS locations."[103] Defendants also point to the opening language of the Form A introduction which "[u]nlike other portions of the Prospectus which used mandatory language," uses discretionary language ("[t]his narrative should address"), which they maintain suggests that "the Prospectus did not require applicants to provide each specific item listed on Form A."[104]

Defendants also state that "the flexibility to adjust the location of spike camps in response to real time conditions" can minimize user conflicts.[105] Plaintiffs both object to Defendants' reliance on user conflict and characterize this argument as a "post hoc rationalization" because "FWS never made mention of those explanations in the decisions now under review."[106]

---

[103] Docket 66 at 21-22 (citing Docket 18-7 at 1-68 (AR 000117-84)). Paragraph 29 of the special use permit application instructs the applicant to "[s]pecifically describe onsite work and/or living accommodations, if required. Include descriptions and locations (GPS coordinates preferred) of spike camps or other remote work and/or living accommodations that are not part of the base of operations." Docket 18-7 at 64, ¶ 29 (AR 000180).

[104] Docket 66 at 22 (citing Docket 18-7 at 42 (AR 000158) ("Provide in narrative form a description of the services you propose to offer. Be sure to explain the services for each offering for which you are applying. This narrative should address, at a minimum, the type and extent of services, including the following . . .") (emphasis in original)).

[105] Docket 66 at 21.

[106] Docket 78 at 7 (first citing *Humane Soc'y of U.S. v. Locke,* 626 F.3d 1040, 1050 (9th Cir. 2010) ("[P]ost hoc rationalizations serve to only underscore the absence of adequate explanation in the administrative record itself."); and then citing *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 (1962) (holding that courts may not accept post hoc rationalizations for agency action)). *See also* Docket 76 at 14, 19; Docket 78 at 12-13.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 23 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 23 of 89

The Court agrees with Plaintiffs that user conflict is a post hoc rationalization advanced by Defendants that was not addressed at all by Manager Brady or Director Boario in their Decisions. Accordingly, the Court will not address Defendants' user conflict argument and Plaintiffs' corresponding counterarguments in the briefing.[107]

The scoring guide allows for a maximum of 20 points for an applicant's spike camps proposal. It instructs that 16 to 20 points should be awarded for applicants with

> Spike camps located off-refuge or a base camp located on-refuge on durable and nonsensitive ground/vegetation where vulnerability to site disturbance and other impacts is minimal. Located and situated to minimize impacts on water bodies, wetland areas and other important and/or sensitive habitats. Effective and specific provisions or strategies to minimize impacts.[108]

One scoring panelist stated the following about Mr. Zweng's spike camps: "spike camps on the refuge however the guides  [*sic*] narrative has stipulations to no [*sic*] degrade or impact areas of spike camps. They are going above and beyond what is outlined in the highest category of review."[109]  The scoring panelists each gave Mr. Zweng 20 points for his spike camp proposal, despite his failure to provide

---

[107] *See Kisor v. Wilkie*, 588 U.S. 558, 579 (2019) ("[A] court should decline to defer to a merely 'convenient litigating position' or '*post hoc* rationalizatio[n] advanced' to 'defend past agency action against attack.'" (second alteration and emphasis in original) (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012))).

[108] Docket 18-8 at 5 (AR 001189).

[109] Docket 18-8 at 23 (AR 001207).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 24 of 89

anything more than the "general locations" of his proposed spike camps.[110] Unlike Mr. Zweng, both Mr. Kronberger and Mr. Rydeen provided the GPS coordinates for their spike camps.[111] However, Mr. Kronberger did not receive 20 points for his spike camp proposal from any panel member; he instead received the following scores: 18/20, 17/20, and 18/20.[112] Like Mr. Kronberger, Mr. Rydeen also did not receive perfect scores; Mr. Rydeen received the following scores: 16/20, 15/20, and 15/20.[113]

In the Kronberger Decision, Director Boario stated that she found "no evidence that the panel scores in the KOD 25 selection process were erroneous or unreasonable, and no evidence that the Refuge Manager unduly relied on erroneous or unreasonable panel scores when selecting Mr. Zweng."[114] Likewise, in the Rydeen Decision, Director Boario stated the same: "I find no evidence that the panel scores in the KOD 25 selection process were erroneous or unreasonable, and no evidence that the Refuge Manager unduly relied on erroneous or unreasonable panel scores when selecting Mr. Zweng."[115]

---

[110] Docket 18-8 at 23, 28, 33 (AR 001207, 001212, 001217).

[111] *Compare* Sealed Addendum Exhibits 1 and 2 *with* Sealed Addendum Exhibit 3.

[112] Docket 18-8 at 37, 41, 43 (AR 001221, AR 001225, AR 001227).

[113] Docket 18-8 at 47, 51, 55 (AR 001231, 001235, 001239).

[114] Docket 18-20 at 15 (AR 001991).

[115] Docket 18-20 at 33 (AR 002009).

The Court finds that according full points to an applicant for his proposed spike camps when their location is indeterminate "is so implausible that it cannot be ascribed to a difference in view or the product of agency expertise."[116] As a result, Director Boario's adoption of these perfect scores for Mr. Zweng's spike camps was arbitrary and capricious.[117]

The AKP-01 permit decision of Susan Alexander, the refuge manager for the Alaska Peninsula National Wildlife Refuge, is instructive.[118] There, Manager Alexander states in relevant part:

> Mr. Zweng does not describe exact locations for his spike camps, indicating only "general locations" on the map. While there are advantages to having highly mobile spike camps which change from year to year, the requirement in the refuge prospectus is to provide camp locations marked on USGS 1:63,360 scale topographical maps. While applicants cannot be exactly precise at this scale, they should come reasonably close to identifying an actual camp location.[119]

---

[116] *Ctr. for Biological Diversity*, 900 F.3d at 1067 (quoting *Greater Yellowstone Coal., Inc.*, 665 F.3d at 1023).

[117] *See, e.g.*, Docket 18-20 at 8 (AR 001984) ("In light of the above, I find that the Refuge Manager adequately considered and addressed Mr. Zweng's and Mr. Kronberger's operations plans. During this review my staff also confirmed that Mr. Zweng's application contained spike camp locations and all other required information.").

Director Boario made a similar statement regarding Mr. Rydeen's appeal. Docket 18-20 at 31 (AR 002007) ("The decision memorandum shows that the refuge manager did consider and address all applicants' operation plans. The refuge manager did not rely solely on the ranking panel's scoring; rather, he made his own determination that the panel's rankings were correct and explained the manners in which the quality of Mr. Zweng's application materials exceeds that of the other applicants' materials. In response to footnote 9 of the appeal, during this review my staff confirmed that Mr. Zweng's application contained spike camp locations and all other required information.").

[118] Docket 18-15 at 9-10 (AR 001603-04); Docket 18-15 at 43-50 (AR 001637-44).

[119] Docket 18-15 at 44 (AR 001638). In the subsequent paragraph, Manager Alexander states: "Mr. Zweng's strategy does not meet the prospectus standard, but I do not find this to be a

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 26 of 89

### B. Camp site safety

Applicants that adhere to the following standard for a safety plan in their proposal receive from 15 up to the maximum 25 points on Form D:

> An effective, specific and comprehensive safety plan which thoroughly addresses both avoidance and reaction to accidents, and is appropriate or specific to the type of operations and field conditions in the area including a highly reliable and effective communication plan. Communication equipment and capabilities are available in the field at all times, visitors or guests are familiar with communication use and procedures and equipment and planning are appropriate to the type of operation and field conditions. Good backup capabilities and contingencies are provided for:
>
> 15 – 25[120]

Mr. Zweng's application states: "My camps are very comfortable and safe due to the camp sites selected."[121] But because of the non-specified location of his camp sites, Plaintiffs contend that FWS could not have rationally evaluated the safety of his camps.[122] Plaintiffs maintain that "[t]he failure of Brady and Boario to address these safety issues in their decisions, and Boario's failure to address the mid-appeal, subsequent remedial measure had a substantial impact that affected

---

sufficiently serious omission to disqualify his application." Docket 18-15 at 44 (AR 001638).

[120] Docket 18-8 at 15 (AR 001199).

[121] Docket 19-24 at 21 (AR 000674).

[122] Docket 78 at 8; *see also* Docket 78 at 9 ("Without a specific location, FWS cannot assess these crucial safety features, making any evaluation impossible.").

the fairness and outcome of the permit award."[123]  Defendants do not address this issue in their opposition brief.

All three scoring panelists gave Mr. Zweng perfect or near perfect scores on Form D for his safety plan as follows: 25/25, 23/25, and 25/25.[124]  One of the evaluators who gave Mr. Zweng a perfect score provided the following rationale: "Detailed safety plans for camp, firearms[,] and in the field."[125]  Both Manager Brady and Director Boario agreed with the scoring panels' near perfect scoring of Mr. Zweng's safety plan.[126]  But the Court finds that FWS did not and could not adequately evaluate the safety of Mr. Zweng's spike camps when he did not identify the exact locations of those camps.

---

[123] Docket 78 at 9-10. In March 2024, mid-appeal, Mr. Zweng, modified his application when he asked Manager Brady if he could add a map with the spike camp and aircraft landing locations (within the refuge instead of outside the refuge) to his file so that he could "operate as safely as possible." Docket 31-6 at 1-4 (AR 002031-34); Docket 31-3 at 4-8 (AR 002023-27). *Compare* Docket 31-6 at 4 (AR 002034) *with* Docket 19-25 at 26 (AR 000703). Director Boario's April 12, 2024 Rydeen Decision did not explicitly address Mr. Zweng's modification of his operations plan.

[124] Docket 18-8 at 26, 32, 36 (AR 001210, 001216, 001220).  Mr. Kronberger received three perfect scores of 25/25 for his safety plan. Docket 18-8 at 40, 42, 46 (AR 001224, 001226, 001230). Mr. Rydeen received in sum, one point less than Mr. Zweng: 23/25, 24/25, and 24/25. Docket 18-8 at 50, 54, 58 (AR 001234, 001238, 001242).

[125] Docket 18-8 at 26 (AR 001210).

[126] Docket 18-9 at 3-4 (AR 001261-62); Docket 18-20 at 15 (AR 001991) ("I find no evidence that the panel scores in the KOD 25 selection process were erroneous or unreasonable, and no evidence that the Refuge Manager unduly relied on erroneous or unreasonable panel scores when selecting Mr. Zweng.").

### C.    Camp site habitat

Plaintiffs assert Mr. Zweng's application failed to describe the habitat for each spike camp in his operations plan.[127]  The Prospectus requires that Form A's "narrative should address, at a minimum, the type and extent of services, including the" "[h]abitat type in which each camp is located."[128]  Mr. Rydeen contends that despite the Prospectus's requirement for applicants to describe the habitat for each camp, Mr. "Zweng does not describe any habitat and merely proposes that he 'will avoid camping on delicate foliage or ground that will be impacted by our presence and look for a durable surface.'"[129]  Mr. Rydeen maintains that because Mr. Zweng "cannot indicate an exact location on a map," FWS "can never confirm whether Zweng's spike camps have any impact on the refuge [habitats]" and as a result, Manager "Brady's decision that infers Zweng's operation plan meets the Prospectus standard is a substantial error, and Boario's decision that Brady's rationale was reasonable is likewise prejudicial error affecting the permit award."[130]

Defendants do not address Plaintiffs' habitat argument in their opposition brief.[131]

---

[127] Docket 63 at 25 ("What type of vegetation and surfaces will be at the (unknown) spike camps? What is the habitat type? How close to water sources will they be and, in turn, how close will cat-holes or latrines be to water sources?").

[128] Docket 18-7 at 42, ¶ 4 (AR 000158).

[129] Docket 78 at 10 (citing Docket 19-24 at 24 (AR 000677)).

[130] Docket 78 at 11.

[131] One of the panel evaluators acknowledges how Mr. Zweng intends to minimize refuge habitat

For the same reasons that this Court finds that FWS acted arbitrarily and capriciously in its evaluation of Mr. Zweng's non-specific spike camp locations and the safety of those camps, the Court finds that the agency was arbitrary and capricious in its failure to consider an important aspect of the problem: it could not rationally assess the habitat of Mr. Zweng's spike camps when the location of those spike camps was unspecified.

### D.    Caching of supplies

Both Plaintiffs maintain that Mr. Zweng's caching proposal violates federal regulations that prohibit leaving any unattended personal property on the refuge for more than 72 hours, particularly if it contains anything that may be attractive to wildlife.[132]

According to Mr. Zweng's application, he intends to:

> leave a bear proof container at our drop off point more than 200' from any water and in an inconspicuous location, this has some additional supplies for safety in case anything we have in our packs get compromised. We retrieve this [cached] container when the hunt is over and we leave the field.[133]

---

impact: "Spike camps on the refuge however the guides narrative has stipulations to no degrade or impact areas of spike camp. They are going above and beyond what is outlined in the highest category of review." Docket 18-8 at 23 (AR 001207).

[132] Docket 62 at 23-25 (citing 50 C.F.R. § 27.93); Docket 63 at 27 (first citing 50 C.F.R. § 27.93; and then citing 50 C.F.R. § 28.41). *See also* Docket 78 at 13-14.

[133] Docket 19-24 at 17 (AR 000670).

Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 30 of 89

Defendants respond that these caching regulations are inapplicable because they are superseded by the Alaska-specific regulations at 50 C.F.R. § 36.35.[134]

For the reasons articulated above by Defendants, Plaintiffs are not entitled to relief on this claim because the regulations Plaintiffs cite are not applicable in KOD-25.

### E. Three-mile spike camp requirement

Plaintiffs assert that Mr. Zweng's application should be disqualified because he "provides no explanation how he will comply with permit conditions that require him to move camps at least three-miles [away from the next camp]."[135] Plaintiffs appear to contend that with a "mobile" spike camp model, it is likely that Mr. Zweng will not be able to locate each of his camps three miles apart from each other.[136]

Plaintiffs reference a special condition in the one-year special use permit issued to Mr. Zweng for the 2024 calendar year while Plaintiffs' administrative appeals were pending before Director Boario.[137] That provision requires that "ALL

---

[134] Docket 66 at 24. 50 C.F.R. § 36.35(a) prohibits "[l]eaving any snowmachine, vessel, off-road vehicle or other personal property unattended for longer than 12 months without the prior permission of the Refuge Manager . . . ."

[135] Docket 63 at 28-29; Docket 62 at 18-19, 24. *See also* Docket 76 at 23-24.

[136] Docket 63 at 28 ("It would be extremely difficult for Mr. Zweng's 'mobile' spike camps to be located three miles from each other for every day of his hunts. Where they are not three miles apart, he will be in violation of the permit conditions.").

[137] Docket 63 at 28; Docket 76 at 23.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 31 of 89
Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 31 of 89

commercial tent camps must be located at least three (3) miles from other commercial camps and must be moved at least three (3) miles following each use period."[138]

Defendants respond that the standard conditions in the Prospectus do not include this three-mile condition.[139] They add, "[Mr.] Zweng cannot be faulted for failing to describe how his activities would comply with a permit condition that was not mentioned in the Prospectus."[140]

In reply, Plaintiffs assert that FWS did not "acknowledge[] that [Mr.] Zweng did not specifically identify his spike camp locations, much less discuss the impact of such failure."[141] Mr. Kronberger contends that "[i]t would be per se arbitrary and capricious to approve an operation plan that violated a permit condition."[142]

On the current record, it is unclear whether the five-year special use permit at issue in these appeals contains the same three-mile condition as the one-year special use permit. When Manager Brady issued the one-year permit, he also

---

[138] Docket 31-3 at 7, ¶ 37 (emphasis in original) (AR002026).

[139] Docket 66 at 24 ("The 'Standard Conditions' described in the Prospectus (AR [000182-84]) do not include the specific condition cited by Plaintiffs."); *see* Docket 18-7 at 66-68 (AR 000182-84) ("Standard Conditions, Region 7, Alaska").

[140] Docket 66 at 24-25.

[141] Docket 76 at 22.

[142] Docket 76 at 24 ("FWS's decision does not discuss and does not appear to consider how [Mr.] Zweng's mobile spike camp proposal can comply with the 3-mile permit condition. FWS's failure to consider such a potential violation is a failure to examine important information and relevant factors.").

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 32 of 89
Case 3:24-cv-00122-SLG   Document 84   Filed 03/31/26   Page 32 of 89

issued the five-year special use permit to Mr. Zweng, valid from January 1, 2024, to December 31, 2028.[143]  However, based on the record, it appears that only one page (page 5) of the special conditions for the five-year permit is included in the Court's record.[144]  The 2024 to 2028 KOD-25 special use permit, like the 2024 one-year special use permit, references the additional special use conditions: (1) "See Attached Special Use Conditions"; and (2) "This permit is . . . subject to the terms, covenants, obligations, and reservations, expressed or implied herein, and to the notice, conditions, and requirements included or attached."[145]  Thus, it would appear likely that the five-year permit contains this same condition.  While the Court agrees with Defendants that Mr. Zweng cannot be faulted for failing to address this condition that was not identified in the Prospectus, the Court finds that the inclusion of this condition when issuing a KOD-25 special use permit with mobile spike camps would be arbitrary and capricious.

### F.  Mr. Zweng's subsequent modification of Form A

Mr. Zweng's application for KOD-25 did not purport to have any float plane landings on the refuge or any flights over the refuge. As a result, Mr. Zweng received higher points than Mr. Kronberger and Mr. Rydeen in the airplane and

---

[143] Docket 31-3 at 1-8 (AR 002020-27); Docket 31-4 at 1-2 (AR 002028-29).

[144] *Compare* Docket 31-4 at 2 (AR 002029) *with* Docket 31-3 at 4-8 (AR 002023-27).

[145] Docket 31-3 at 1 (AR 002020); Docket 31-4 at 1 (AR 002028).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 33 of 89

motorized use scoring factor on Form A.[146]  For this factor, Mr. Zweng received 20/20 points from all three panelists.[147]  One panelist noted "sea plane flight in and out of landing zone"; another noted "not landing on refuge."[148]  In contrast, both Mr. Kronberger and Mr. Rydeen, whose operations plans each included aircraft landings in the refuge, received fewer points on this factor from all scoring panelists.[149]  The Brady Decision, issued in October 2022, was based on Mr. Zweng's original application, although it does not mention this topic in the decision.[150]  And, in September 2023, Manager Brady issued both the conditional one year permit and the 5-year special use permit to Mr. Zweng.[151]

On March 22, 2024, Mr. Zweng requested a modification of his permits to land a plane within the refuge, "if the weather does not allow landing in my primary location."[152]  FWS wrote back and asked: "Can you give us GPS locations and a

---

[146] Docket 63 at 30; *see also* Docket 19-25 at 24-46 (AR 000701-03)).

[147] Docket 18-8 at 23, 29, 33 (AR 001207, 001213, 001217).

[148] Docket 18-8 at 23, 29 (AR 001207, 001213).

[149] Mr. Kronberger received 17/20, 18/20, and 17/20 points. Docket 18-8 at 37, 41, 43 (AR 001221, 001225, 001227). Mr. Rydeen received 16/20, 18/20, and 17/20 points. Docket 18-8 at 48, 51, 55 (AR 001232, 001235, 001239).

[150] Docket 18-9 at 3-4 (AR 001261-62).

[151] *See* Docket 31-3 at 1-8 (AR 002020-27); Docket 31-4 at 1-2 (AR 002028-29).

[152] Docket 31-6 at 2 (AR 002032).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 34 of 89
Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 34 of 89

map of possible landing lakes?"[153]  Mr. Zweng responded with the following map

with his hand-written notes, but no GPS locations:



154

---

[153] Docket 31-6 at 2 (AR 002032).

[154] Docket 31-6 at 4 (AR 002034). The Court notes that this reproduced map above was not filed

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 35 of 89

On March 25, 2024, FWS advised Mr. Zweng that Manager Brady "has approved this addition to your prospectus."[155]  The Kronberger Decision, decided on March 20, 2024, preceded the requested modification.[156]  The Rydeen Decision, decided on April 12, 2024, does not reference this modification of Mr. Zweng's Prospectus, and as noted above, adopts and ratifies all the scores of the panels.[157]

Form A requires the applicant to identify access points and routes of access to be used, including the "location and type of landing sites," and "methods or strategies to reduce impacts of aircraft use on resources."[158]  Plaintiffs contend that "[t]he initial selection of a guide's application must be based only on the merits of their proposal *at the time of selection*."[159]  They maintain that "[a]llowing a guide to negotiate an operation plan after the applications have been ranked," violates (1) the FWS Selection Guidelines; (2) the process required under 50 C.F.R. § 36.41(e); (3) the appeal process under 50 C.F.R. § 36.41(i); and (4) the APA.[160]

---

under seal.

[155] Docket 31-6 at 1 (AR 002031).

[156] *See supra* note 38.

[157] *See supra* note 39.

[158] Docket 18-7 at 42 (AR 000158).

[159] Docket 63 at 29 (emphasis in original). *See also* Docket 78 at 14-16.

[160] Docket 63 at 29-32; *see also* Docket 62 at 26 (same); Docket 76 at 26 (same).

First, Plaintiffs assert that FWS's approval to allow Mr. Zweng to amend his application before it made a final decision on the permit for KOD-25[161] was contrary to its own Selection Guidelines, which instructs refuge managers that they "cannot allow the applicant to change or modify his/her plan of operations to obtain a competitive advantage."[162]

Second, Mr. Kronberger contends that FWS's approval of Mr. Zweng's "deficient addition" prior to the final decision by Director Boario violated the process required under 50 C.F.R. § 36.41(e)(4), which provides: "All prospectuses will identify the selection criteria that the Service will use to evaluate the proposals."[163] And Mr. Rydeen cites to 50 C.F.R. § 36.41(e)(12), which provides that a special use permit transferee may modify the operations plan with the written consent of the refuge manager "as long as the chance does not result in increased adverse impacts to refuge resources and other refuge uses."[164]

Third, Plaintiffs maintain that Director "Boario's decision fails to consider Mr. Zweng's new landing locations *within* the refuge, which violates 50 C.F.R. § 36.41(i)(5) governing the appeal process and renders Boario's decision arbitrary

---

[161] *See* Docket 31-6 at 1 (AR 002031).

[162] Docket 63 at 29-30 (emphasis omitted) (quoting Docket at 18-6 at 30 (AR 000114)).

[163] Docket 63 at 31; 50 C.F.R. § 36.41(e)(4).

[164] Docket 62 at 29 n.22.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 37 of 89
Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 37 of 89

and capricious."[165] 50 C.F.R. § 36.41(i)(5) states in relevant part: "Permittee compliance with any decision or order of a refuge manager shall be required during the appeal process unless the regional director makes a preliminary finding contrary to the refuge manager's decision, and prepares a written determination that such action is not detrimental to the interests of the United States . . . ." Mr. Kronberger maintains that because Director Boario "made no written determination" on this issue, "Mr. Zweng was required to operate under the refuge manager's decision approving his non-amended operations plan."[166]

Defendants assert that Mr. Zweng did not amend his operations plan, but rather, simply deviated from the original operations plan.[167] Defendants assert that "general condition 22 of the temporary, conditional permit initially issued to Zweng also contemplates deviations from operation plans."[168] Paragraph 22, in relevant part, provides: "All deviations from the [permittee's] operations plan, [as amended and accepted by FWS], must receive prior written approval by the Refuge Manager or his designee."[169] Further, Paragraph 10 authorizes the permit holder to provide

---

[165] Docket 62 at 29 (emphasis in original); *see also* Docket 63 at 32.

[166] Docket 63 at 32.

[167] Docket 66 at 25.

[168] Docket 66 at 25 (citing Docket 31-3 at 5 (AR 002024)).

[169] Docket 31-3 at 5, ¶ 22 (AR 002024) (emphasis in original).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 38 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 38 of 89

the refuge manager with "any other changes in information provided in the original permit/proposed operations plan."[170]

While Manager Brady may well have appropriately approved Mr. Zweng's modifications of his operations plan while the permit appeals were pending before Director Boario, the Court finds that Director Boario's failure to address or consider this modification of Mr. Zweng's operations plan when reviewing the permit appeals constitutes error and was arbitrary and capricious. The Court agrees with APHA's assertion that Mr. Zweng's amendment to his operations plan to include aircraft landings in the refuge "was important enough that FWS should have reconsidered the competition to account for it."[171] Defendants conflate a permissible conditional permit deviation with the provision allowing selected applicants to provide information to the regional director during the appeal process.[172] While deviation of an operations plan is permissible, and perhaps prudent for the one-year permit, even while one of the appeals was still pending, FWS acted arbitrarily and capriciously when it failed to factor this deviation from

---

[170] Docket 31-3 at 4, ¶ 10 (AR 002023) ("Annually, prior to beginning any activities allowed by this permit, the permittee must provide the refuge manager with: 1) list of all aircraft and other vehicles or vessels to be used, with identification information; 2) names of assistant guides and other employees, or any person providing services to clients on refuge lands; and 3) any other changes in information provided in the original permit/proposed operations plan.").

[171] Docket 67-1 at 11; Docket at 18-6 at 30 (AR 000114) (Refuge Manager Guidelines). APHA disagrees with FWS's position that points should be subtracted for applications that proposed float plane landings in the refuge, a point this Court does not address. *See* Docket 67-1 at 11-12.

[172] *See* Docket 66 at 28.

Mr. Zweng's original operations plan into its review on the appeals of the five-year permit.

### G. *Ex parte* communications

Plaintiffs contend that FWS and Mr. Zweng had improper *ex parte* communications during the administrative appeal process.[173]  In a footnote, Mr. Rydeen cites to *Greene v. Babbitt* for the proposition that "[i]nformal decision-making behind closed doors and with an undisclosed record is not an appropriate process for the determination of matters of such gravity."[174]  While Defendants cite to 50 C.F.R. § 36.41(i)(3),[175] Defendants do not appear to directly address Plaintiffs' *ex parte* communications argument in their opposition brief.[176]  50 C.F.R. § 36.41(i)(3) provides that "[i]n appeals involving applicants who were not selected during a competitive selection process, the selected applicant concurrently will have the opportunity to provide information to the regional director prior to the final

---

[173] Docket 62 at 11 n.3 (citing Docket 18-14 at 46 (AR 001594); Docket 18-16 at 10-38 (AR 001693-1721); Docket 18-19 at 40-61 (AR 001925-46)); Docket 63 at 14 n.4 ("This February 13, [2024] communication and information submitted by Mr. Zweng is a blatant example of on-going, ex parte communications with Mr. Zweng that are likely in violation of the APA's prohibition on ex parte contacts." (citing 5 U.S.C. § 557(d))); Docket 76 at 13 n.7.

[174] Docket 62 at 11 n.3; 64 F.3d 1266 (9th Cir. 1995).  Mr. Rydeen also cites *Greene v. Babbitt,* 943 F. Supp. 1278 (W.D. Wash. 1996) for the proposition that *ex parte* contacts with a decision maker violates the APA.

[175] Docket 66 at 28 (citing 50 C.F.R. § 36.41(i)(3)).

[176] *See also* Docket 76 at 13 ("FWS did not deny that its receipt of ex parte information and communications from [Mr.] Zweng appears to be in violation of 5 U.S.C. § 557(d).").

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 40 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 40 of 89

decision." This regulation does not explicitly address whether the information can be provided to the regional director on an *ex parte* basis.

In his reply, Mr. Kronberger asserts that "if 5 U.S.C. § 557(d) does not apply," then the allegedly "improper ex parte contacts are a violation of due process where plaintiffs were never given notice of the information or an opportunity to counter it."[177]

Because Mr. Kronberger does not raise the constitutional due process argument, specific to the *ex parte* communications issue, for the first time until his reply brief, this argument is deemed waived.[178] And where Mr. Kronberger does raise due process in his opening brief, it is specific to Form E and FWS's consideration of the 2016 BLM Notice.[179] Similarly, while Mr. Rydeen mentions due process in his opening brief, these references are either specific to other contexts or not meaningfully developed.[180]

---

[177] Docket 76 at 13-14.

[178] *Hui Ran Mu v. Barr*, 936 F.3d 929, 936 (9th Cir. 2019) ("[I]ssues not raised in the opening brief are deemed waived.").

[179] *See* Docket 63 at 45-49.

[180] *Waterkeeper All. v. EPA*, 140 F.4th 1193, 1213 (9th Cir. 2025) ("We will generally not consider issues not raised in a party's opening brief or arguments that are not meaningfully developed.").

Mr. Rydeen asserts that the FOIA issue violated his due process rights. Docket 62 at 10. He also states, in a footnote, that the fact that Mr. Zweng's operations plan was never made available to him constituted a due process violation. Docket 62 at 45 n.38. These arguments are not meaningfully developed and will not be considered.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 41 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 41 of 89

The Court expresses no opinion as to whether FWS's actions violated constitutional due process and now considers the APA's applicability.[181] "The *ex parte* communications prohibition [in APA § 557(d)] applies whenever the three requirements set forth in APA § 554(a) are satisfied: The administrative proceeding must be 1) an adjudication; 2) determined on the record; and 3) after the opportunity for an agency hearing."[182] "Section 554 [of the APA] 'generally applies where an administrative hearing is required by statute or the Constitution.'"[183]

It is undisputed that from 2022 to 2024, Mr. Zweng and FWS staff exchanged multiple email communications that Plaintiffs characterize as illegal *ex parte* communications.[184] However, the bar on *ex parte* communications in § 557(d) only applies "when a hearing is required to be conducted in accordance with section 556 of this title."[185] Section 556 sets forth the procedure for "hearings required by section 553 or 554 of this title."[186] Section 553 relates to administrative rule making, and § 554 only applies to "adjudication[s] required by statute to be

---

[181] Docket 1 at 3, ¶ 6.

[182] *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1540 (9th Cir. 1993).

[183] *2-Bar Ranch Ltd. P'ship v. U.S. Forest Serv.*, 996 F.3d 984, 994 (9th Cir. 2021) (quoting *Aageson Grain & Cattle v. U.S. Dep't of Agric.*, 500 F.3d 1038, 1044 (9th Cir. 2007)).

[184] *See supra* note 173.

[185] 5 U.S.C. § 557(a).

[186] *Id.* § 556(a).

determined on the record after opportunity for an agency hearing."[187] Here, the controlling statute, 16 U.S.C. § 668dd, does not set forth any requirement for an adjudicatory hearing. Rather, Congress authorized FWS to issue regulations to manage the refuges.[188]

In *2-Bar Ranch*, the Ninth Circuit rejected the same argument advanced by Plaintiffs here: that whenever regulated parties have a due process right to an administrative hearing, the agency must observe the APA's formal adjudication procedures.[189] The Ninth Circuit held that the administrative appeal before the Forest Service Supervisor in that case was not an "adversary adjudication" for purposes of the Equal Access to Justice Act's fee-shifting provision.[190] The plaintiffs had contended "that they had a constitutional right to be heard before their permits were suspended and that [S]ection 554 therefore applied to their administrative appeal."[191] Citing 36 C.F.R. § 214.16(b), a Forest Service regulation providing an informal hearing to parties appealing a decision from the Appeal Deciding Officer, the Ninth Circuit rejected the plaintiffs' argument because "[u]nlike administrative hearings governed by section 554, '[o]ral presentations are

---

[187] *Id.* §§ 553(b), 554(a).

[188] *See* 16 U.S.C. § 668dd(b)(5).

[189] *2-Bar Ranch Ltd. P'ship*, 996 F.3d at 994 ("The administrative appeal process in this case was prescribed not by statute but by Service regulations").

[190] *Id.* at 995 (citing *Ardestani v. INS*, 502 U.S. 129, 139 (1991)).

[191] *Id.* at 994 (citing 36 C.F.R. § 214.16(b)).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 43 of 89
Case 3:24-cv-00122-SLG   Document 84   Filed 03/31/26   Page 43 of 89

not evidentiary proceedings involving examination and cross-examination of witnesses and are not subject to formal rules of procedure.'"[192]

APHA observes that unlike the procedures in other "prospectus competitions for government contracts," FWS's appeal procedure does not allow for "the timely sharing of the competing applications, the FWS panel scoresheets, and post-award advocacy submissions such as Zweng's briefs."[193]  APHA contends that this lack of transparent appeal procedures "led to significant appealable issues being discovered by Kronberger and Rydeen only after the filing of this judicial review case, resulting in a lack of agency reasoning on key issues, and the judicial review difficulties addressed" in its amicus brief.[194]  Further, APHA maintains that FWS's appeal process is at odds with 5 U.S.C. § 558(c), which provides that "When application is made for a license required by law, the agency, with due regard for the rights and privileges of all the interested parties or adversely affected persons

---

[192] *Id.* (quoting 36 C.F.R. § 214.16(b)); *see* 36 C.F.R. §§ 214.8(b), 214.16(a).

[193] Docket 67-1 at 18-19 ("In prospectus competitions for government contracts, there is a well-known procedure in which the key facts from the competing parties' applications are shared with the contestants' lawyers during the appeal proceedings before the agency or court, typically the Government Accounting Office, a Board of Contract Appeals, or the Court of Claims.") (citing Protective Orders and Access to Sealed Documents in Bid Protest Cases in the Court of Federal Claims, https://www.cfc.uscourts.gov/protective-orders-and-access-sealed-documents-bid-protest-cases (last viewed June 5, 2025); Guide to GAO Protective Orders (GAO, July, 2019) https://www.gao.gov/assets/gao-19-613sp.pdf)). *But see* 50 C.F.R. § 36.41(i) (no sharing subject to a protective order provided).

[194] Docket 67-1 at 19.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 44 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 44 of 89

and within a reasonable time, shall set and complete . . . other proceedings required by law and shall make its decision."[195]

APHA stresses the procedural deficiency in Director Boario's decision to hold Mr. Rydeen responsible for Mr. Kronberger's 2016 BLM Notice based on Mr. Rydeen's 1% interest in Mr. Kronberger's LLC at the time, in that the decision was made without any notice to Mr. Rydeen.[196]  Like APHA, the Court finds it troubling that Mr. Rydeen "never had notice or an opportunity to defend himself against these new issues before Boario decided his appeal."[197]  Although Director Boario may rely on her own research and Mr. Zweng's information, and it appears undisputed that Mr. Rydeen did own 1% of Mr. Kronberger's LLC, Mr. Rydeen should have been given notice by Director Boario of her intended decision and an opportunity to address whether he was a business partner of Mr. Kronberger—i.e. to accord him "due regard for his rights and privileges" as a permit applicant.[198]

The Ninth Circuit has held that "the court will not consider arguments raised only in amicus briefs."[199]  APHA's APA §§ 558(c) and 555(b) arguments are raised

---

[195] Docket 67-1 at 19. APHA also cites to 5 U.S.C. § 555(b), which provides, in part, "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."

[196] Docket 67-1 at 17-18 (first citing 5 U.S.C. §§ 555, 558; and then citing 50 C.F.R. § 36.41(c)).

[197] Docket 67-1 at 17.

[198] 5 U.S.C. § 558(c). *See also id.* § 558(b), which provides in relevant part: "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."

[199] *United States v. Wahchumwah*, 710 F.3d 862, 868 n.2 (9th Cir. 2013) (citing *Chaker v.*

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 45 of 89

only in its amicus brief.[200]  Although APHA's argument may not serve as a basis for relief in this action, it is clear that FWS could improve its permit selection process to better respect the rights and privileges of all applicants.[201]

## III.  Additional Challenges

Mr. Kronberger identifies 11 instances where he maintains FWS "failed to articulate a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.'"[202]  Mr. Rydeen appears to make eight substantially similar arguments for why the final agency action of FWS should be reversed.[203]  Defendants respond that Manager Brady

> selected Zweng's application to provide big game guiding services for KOD-25, relying upon four primary factors: (1) Zweng created a client handbook and a guide handbook, which were both extremely thorough and not just created for the Prospectus; (2) Zweng's application went into very specific details about his operation and

---

*Crogan*, 428 F.3d 1215, 1220 (9th Cir. 2005)).

[200] "An amicus curiae generally cannot raise new arguments on appeal." *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) (citing *United States v. Gementera,* 379 F.3d 596, 607–08 (9th Cir. 2004)).

[201] *See also* Docket 67-1 at 19 ("APHA does not see how applicants for a mutually exclusive permit can be afforded respect for their 'rights and privileges,' including their right to 'appear before the agency for the presentation, adjustment, or determination of an issue,' and how the agency can proceed with 'due regard for the convenience and necessity of the parties,' 5 U.S.C. §§ 555(b), 558(c), without the timely sharing of the competing applications, the FWS panel scoresheets, and post-award advocacy submissions such as Zweng's briefs.").

[202] Docket 63 at 33 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S 29, 43 (1983)).

[203] Docket 62 at 33-66. Mr. Rydeen also asserts that Manager Brady's and Director Boario's decisions contain false statements that are specific to his application. Docket 62 at 34-42. The allegedly false statements are that Mr. Rydeen failed to report a violation in Form E, and that Mr. Rydeen overstates his experience. Docket 62 at 34-42.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 46 of 89
Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 46 of 89

safety plan; (3) Zweng has experience in KOD-18, a complex unit with federal and state lands, and is a Site Steward for the Alutiiq Museum; and (4) Zweng has operated safely and without violations in the past.[204]

Before addressing the Form-specific arguments, the Court first addresses Defendants' assertion that only the scoring panels had to base their decision on certain Prospectus criteria and the scoring forms.[205] Defendants maintain that Manager Brady and Director Boario could rely on broader criteria.[206]

Plaintiffs contend that "FWS at every level—the scoring panel, the refuge manager, and the regional director" failed to use the selection criteria that was identified in the Prospectus.[207] Applicant proposals must include five forms (Forms A through E) to be scored by a three-person ranking panel, and a sixth form, client references, (Form F) to be reviewed by the refuge manager.[208] To assist the scoring of Forms A through E, on April 23, 2022, FWS published a scoring guidance document for the ranking panels to use.[209] The ranking criteria are

---

[204] Docket 66 at 6.

[205] *See, e.g.*, Docket 66 at 29.

[206] *See* Docket 66 at 30 ("As the Refuge Manager and Regional Director have a wider purview from the reviewing panel, it was proper for them to consider the underlying facts.").

[207] Docket 76 at 16; *see, e.g.*, Docket 76 at 16 ("FWS's argument that it is not so bound is without legal basis and in itself reflects the arbitrary and capricious nature of its decision."); Docket 76 at 34-36 ("FWS completely failed to address scoring errors.").

[208] Docket 18-7 at 42-54 (AR 000158-70) (Forms A through F). Scoring totals are across the forms are as follows: Form A, operations plan, 155/400 points; Form B, ability to provide a high quality service, 75/155 points; Form C, experience, 110/400; and Form D, safety plan and training, 60/400. Docket 18-7 at 36 (AR 000152).

[209] Docket 18-8 at 1 (AR 001185) ("Guidance to Ranking Panel Members for Scoring Big Game

"intended to provide panel members with a consistent basis for scoring each proposal."[210]

The Court agrees with Defendants that while the panels were limited to the scoring guidance developed by FWS for Forms A through E, the refuge manager and regional director could rely on broader criteria.[211] Section VI of the Prospectus, in relevant part, states:

> The refuge manager will base his/her final selection on the results of the ranking panel evaluations, the manager's own examination of the applications, interviews of the applicants, client references, and other records or sources of information (e.g., permit files) that can document the applicant's performance and qualifications.[212]

Similarly, the guidelines for refuge managers provides that refuge managers should use the following sources of information to make the final selection: (1) ranking panel evaluations/score sheet and accompanying notes; (2) big game guide permit applications; (3) guide service evaluations provided by clients; (4) interviews with the applicants; and (5) a broad catch-all of "[o]ther records or

---

Guide Proposals for Guide Use Areas on National Wildlife Refuges in Alaska"); *see* 50 C.F.R. § 36.41(e)(5) ("A panel of Service employees who use a scoring process based on the selection criteria will evaluate and rank applications received in response to a prospectus.").

[210] Docket 18-8 at 2 (AR 001186) ("<u>The rationale used in assigning scores must be well founded and applied fairly and consistently to all applicants, and it must be clearly documented</u>.") (emphasis in original).

[211] *Compare* Docket 18-8 at 1 (AR 001185) ("Guidance to Ranking Panel Members for Scoring Big Game Guide Proposals for Guide Use Areas on National Wildlife Refuges in Alaska.") *with* Docket at 18-6 at 28-32 (AR 000112-16) ("Guidelines for Refuge Managers to Make Final Selection of Big Game Guide Applicants").

[212] Docket 18-7 at 36 (AR 000152) ("Selection of Successful Applicants").

sources of information . . . that can document the performance and qualifications for the applicant."[213]

However, Manager Brady and Director Boario must still consider relevant factors, justify their decisions with adequate reasoning, and establish that FWS considered each criterion of the applicants' proposal or explain why such consideration was not warranted as set forth by the regulations and procedures. Moreover, where, as here, Director Boario expressly adopted and ratified the panelists' scores, her decision to do so is reviewable under the arbitrary and capricious standard.[214]

### A.      Comparison of operations plans (Form A)

Mr. Kronberger asserts that the agency's decision is arbitrary and capricious "because it shows that FWS made no analysis and did not even consider the most important and heavily weighted factor," namely, the operations plan.[215]   Mr. Kronberger contends that "the Kronberger Decision disclaims any requirement that either the refuge manager or the regional director 'rank each applicant, or report

---

[213] Docket at 18-6 at 28-29 (AR 000112-13).

[214] *See* Docket 18-20 at 15 (AR 001991) (Kronberger Decision) ("I find no evidence that the panel scores in the KOD 25 selection process were erroneous or unreasonable, and no evidence that the Refuge Manager unduly relied on erroneous or unreasonable panel scores when selecting Mr. Zweng."); Docket 18-20 at 33 (AR 002009) (Rydeen Decision) (same).

[215] Docket 63 at 34.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 49 of 89

which applicant was superior, with respect to each selection factor.'"[216]  According to Mr. Kronberger, the stated actions and justifications in the Brady Decision merely "show the refuge manager may have read [the applicants' operations plans], and it does not show that Mr. Brady gave substantive consideration to the parties' plans of operation or substantively compared or analyzed them before choosing Mr. Zweng."[217]  Manager Brady's two-page memorandum contains no discussion of either Mr. Kronberger's or Mr. Rydeen's operations plan.  The Brady Decision's discussion of Mr. Zweng's operations plan simply states, Mr. Zweng "goes into very specific details in his operations and safety plans scoring almost all points from the panel."[218]  Manager Brady also "agree[d] with the Evaluation Panels ranking" in selecting Mr. Zweng to receive the KOD-25 permit.[219]  Mr. Rydeen similarly contends that "not only is Brady's decision wrong, but it is seriously deficient insofar as it fails to 'provide clear and solid documentation of

---

[216] Docket 63 at 35. Director Boario's alleged disclaimer states as follows:

> Refuge Managers need not and, typically, do not utilize a scoresheet process similar to the Service ranking panel when evaluating applications or making or reporting selections. They need not, and typically do not rank each applicant, or report which applicant was superior, with respect to each selection factor. Neither the federal regulations at 50 CFR § 36.41 nor the relevant prospectus contemplate a specific framework or template that the Refuge Manager was required to follow when explaining his selection.

Docket 18-20 at 7 (AR 001983).

[217] Docket 63 at 34.

[218] Docket 18-9 at 4 (AR 001262).

[219] Docket 18-9 at 4 (AR 001262).

Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 50 of 89

the rationale or basis for (the) selection' of Mr. Zweng's operations plan . . . and adopts clearly erroneous panel scores."[220]

Defendants point to Director Boario's Decisions in which she "discussed how the Refuge Manager did consider and address all applicant's operations plans."[221] Indeed, as part of the Kronberger and Rydeen Decisions, Director Boario prepared two 11-page Statement of Findings responding to each appeal point raised by Mr. Kronberger and Mr. Rydeen, including their challenges to Manager Brady's review of Plaintiffs' operations plans.[222]

In response to Plaintiffs' critiques of the format and length of Manager Brady's memorandum raised by Plaintiffs in their administrative appeals, Director Boario stated: "There is no required length or format for Refuge Manager memoranda."[223] While the Court agrees that neither the Prospectus nor the regulation impose page limits, the brief nature of the Brady Decision suggests a lack of meaningful consideration of the applicants' operations plans where the three applications together total over 1,000 pages. And FWS's Selection Guidelines direct refuge managers to create a decision document that "address[es]

---

[220] Docket 62 at 48.

[221] Docket 66 at 15 (citing Docket 18-20 at 26-27 (AR 002002-03)).

[222] Docket 18-20 at 6-16 (AR 001982-92) (Kronberger Decision Statement of Findings); Docket 18-20 at 25-34 (AR 002001-10) (Rydeen Decision Statement of Findings).

[223] Docket 18-20 at 7 (AR 001983).

each criterion" and uses "clear headings that correspond with ranking panel criteria"[224] in their selection decision and adds, "[w]hen you summarize how applicants compare in a criterion, include all best qualified. In other words, do not discuss two of three applicants; discuss all three."[225]

Specifically in response to Mr. Kronberger's assertion that the Brady Decision did not address Mr. Kronberger's proposed operations plan, Director Boario noted that Manager Brady stated he had reviewed "the panel's scoring, the client use data, and his interview notes to make a selection.""[226] She concludes that "the Refuge Manager provided independent, narrative evaluation of each application and highlighted considerations he found important to his decision."[227]

FWS's failure to identify the infirmity in Mr. Zweng's operations plan with respect to the unspecified location of his spike camps, as discussed above, calls into question the adequacy of its review of Plaintiffs' operations plans. Moreover, the format of Manager Brady's memorandum departs considerably from the instructions in the Guidelines for Refuge Managers to Make Final Selection of Big Game Guide Applicants.[228] On remand, FWS should follow the Refuge Manager

---

[224] Docket at 18-6 at 31 (AR 000115) (Refuge Manager Guidelines).

[225] Docket at 18-6 at 32 (AR 000116) (Refuge Manager Guidelines).

[226] Docket 18-20 at 7 (AR 001983) (Kronberger Decision). Director Boario makes a very similar conclusion in the Rydeen Decision. *See* Docket 18-20 at 26-28 (AR 002002-04).

[227] Docket 18-20 at 8 (AR 001984).

[228] *See* Docket at 18-6 at 31-32 (AR 000115-16) ("Creating a Decision Document").

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 52 of 89
Case 3:24-cv-00122-SLG   Document 84   Filed 03/31/26   Page 52 of 89

Guidelines' "Creating a Decision Document" instructions or explain why a deviation from those guidelines is warranted.

## B. Evaluation of handbooks and photos (Form B)

Both Plaintiffs assert that Manager Brady improperly awarded the "permit on the basis of handbooks, without giving any substantive explanation or rationale" and "spent an inordinate amount of dialogue touting the 'great detail' in Mr. Zweng's client handbook and guide handbook, and how 'photos of each client at the [refuge] visitor center' added 'credibility' to his application."[229]

Defendants respond that Director Boario "correctly noted" that Manager Brady's consideration of handbooks was "simply a factor considered by the Refuge Manager—not the determining factor—and it was reasonable to find value in informing clients of what to expect when arriving in Kodiak for a bear hunt."[230]

Form B addresses the applicant's ability to provide a high-quality guiding service to the public; applicants can receive a maximum score of 75 points on this form.[231] On this form, a maximum of ten points can be awarded for "educational and interpretive programs."[232] Thus, out of the total 400 points available in scoring

---

[229] Docket 63 at 36-37 (alteration in original); *see* Docket 62 at 42 ("The submission of a nice handbook by Mr. Zweng (which is worth only 10/400 points) should not preempt his significant lack of experience and success, or his substandard operations plan.").

[230] Docket 66 at 12 (citing Docket 18-20 at 8 (AR 001984)).

[231] Docket 18-7 at 36 (AR 000152) ("Selection of Successful Applicants").

[232] Docket 18-8 at 10 (AR 001194).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 53 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 53 of 89

a Prospectus, handbooks and other educational materials could receive no more than 2.5% of the total. Mr. Zweng received ten points from each of his panel evaluators on this factor.[233]  Mr. Kronberger received 9/10, 10/10, and 10/10[234] and Mr. Rydeen received 7/10, 8/10, and 8/10.[235]

Under Manager Brady's evaluation of the applicants' ability to provide high quality guiding service, Manager Brady remarked that "what stands out are the two handbooks [Mr. Zweng] created": "The Client handbook and a Guide handbook both are extremely thorough and well done and obviously not just created for the Prospectus."[236]  Manager Brady did not note that Mr. Zweng had never been to KOD-25 at the time he filed his application.[237]  And, although Mr. Kronberger had been the exclusive guide in KOD-25 since 2016, Manager Brady wrote Mr. Kronberger's "knowledge about the Refuge is limited."[238]  Manager Brady also

---

[233] Docket 18-8 at 24, 29, 34 (AR 001208, 001213, 001218).

[234] Docket 18-8 at 38, 41, 44 (AR 001221, 001225, 001228).

[235] Docket 18-8 at 49, 52, 56 (AR 001233, 001236, 001240).

[236] Docket 18-9 at 3 (AR 001261).

[237] This observation is based on the Court's review of the record. *See also* Docket 63 at 44 ("The Brady Decision never acknowledged or discussed the fact Mr. Zweng has zero experience in KOD-25 and has never set foot in that guide use area, and it never discussed the impact of that fact.").

[238] Docket 18-9 at 4 (AR 001262); *see* Docket 19-1 at 16 (AR 000201). While Mr. Kronberger acquired the KOD-25 permit from Mr. Harms, he had been hunting in KOD-25 since 2006. Docket 19-1 at 15 (AR 000200).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 54 of 89
Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 54 of 89

wrote both Plaintiffs "have limited information provided about the Refuge and mainly consists of the similar language and links to Refuge information."[239]

In responding to Mr. Kronberger's appeal point that "[t]he decision gives inappropriate weight to handbooks and photos," Director Boario stated that she found "no evidence in the record that the Refuge Manager based his selection 'primarily' on handbooks and photos or otherwise gave inappropriate weight to these materials."[240] She also "stress[ed] that Refuge Managers are not obligated to select guides based solely on their ranking panel scores," but instead "consider a much broader suite of information."[241]

Director Boario's determination that there was "no evidence" in the record that the Refuge Manager gave inordinate weight to the handbooks and photos is not supported by substantial evidence in the record, as it is at odds with the Refuge Manager's statement in his memorandum that Mr. Zweng's "Prospectus goes into great detail on numerous criteria but what stands out are the two handbooks he created."[242]

---

[239] Docket 18-9 at 4 (AR 001262).

[240] Docket 18-20 at 8 (AR 001984).

[241] Docket 18-20 at 8 (AR 001984).

[242] Docket 18-9 at 41 (AR 001261); *see* Docket 18-20 at 8 (AR 001984).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 55 of 89

Case 3:24-cv-00122-SLG   Document 84   Filed 03/31/26   Page 55 of 89

### C. Timeframes for KOD-25 experience (Form C)

Applicants can receive up to 110 total points for their guiding and other relevant experience, with points based on the number of years of experience and the location and type of experience.[243]  Form C requires applicants to complete a table relating to the applicant's experience and provide relevant documentation across specific timeframes.[244]

However, FWS's documents provide inconsistent timeframes.  The specified timeframes in the evaluation scoring sheets do not match the timeframes in both the Prospectus and the Guidance to Ranking Panel Members.  In the Prospectus, the timeframe for "Other experience on the refuge Guide Use Area being applied for" is the preceding 20 years.[245]  The timeframe for other activities on KOD-25 in the Prospectus and the Guidance is also 20 years.[246]  However, the timeframe in the evaluation scoring sheets used by the ranking panels is 20 years for guiding or outfitting in KOD-25, but only 10 years for other activities in KOD-25.[247]

The Court finds this inconsistency especially troubling under the present circumstances.  In April 2022, "Requests for Proposals in 77 guide use areas within

---

[243] Docket 18-8 at 1 (AR 0001185); Docket 18-8 at 11-14 (AR 001195-98).

[244] Docket 18-7 at 36 (AR000152); Docket 18-7 at 45-49 (AR 000161-65) ("Demonstrated Experience and Knowledge of the Terrain, Climate, and Species to be Hunted").

[245] Docket 18-7 at 46 (AR 000162).

[246] Docket 18-8 at 12 (AR 001196).

[247] Docket 18-8 at 57 (AR 001241).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 56 of 89

Case 3:24-cv-00122-SLG   Document 84   Filed 03/31/26   Page 56 of 89

13 wildlife refuges were advertised, and [FWS] received 163 proposals/applications."[248]  And yet, all panel members scoring those 163 proposals received a binder with the same scoring sheet that contained the incorrect Form C criteria.[249]  "Because the 5-year permit awarded [to Mr. Zweng] is extendable for 5 years for good performance, there are likely 8 years left on the permit, 2026-2033."[250]  An exclusive permit such as the single KOD-25 permit holds considerable financial value as a single bear hunt can cost up to "$30,000 in guide fees per hunter."[251]

Basic information such as the years of experience scoring panelists in each category are to consider must be accurate and consistent across all relevant FWS documents.  Here, FWS has acted in an arbitrary and capricious way by telling the applicants to provide their experience in the GUA for one set of years but then instructing scoring panelists to only consider a portion of that experience.  Then Director Boario expressly adopted the panelists scores, despite their inconsistency with the Prospectus and the Guidance.  Even under the deferential arbitrary and

---

[248] Docket 18-8 at 19 (AR 001203).

[249] Docket 18-8 at 19 (AR 001203) ("We have a binder for each panel member that contains a copy of the Prospectus and GUA maps, Panel Score Sheets - hard copy and electronic, the Ranking Panel Guidance document, Excel Scoring Calculator – electronically, this Information Memo and miscellaneous examples.").

[250] Docket 67-1 at 20 n.32.

[251] Docket 67-1 at 6.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 57 of 89

Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 57 of 89

capricious standard, these agency actions were based upon a lack of "a consideration of the relevant factors" and a "clear error of judgment."[252]

### D. Mr. Zweng's hunting experience (Form C)

Mr. Kronberger asserts that Manager Brady's finding that Mr. Zweng is "'highly competitive' with respect to his ability to provide a high-quality hunt, based on his 'experience with Brown Bear guiding'" is not supported by substantial evidence in the record.[253] Mr. Kronberger presents a table to contrast Mr. Kronberger's extensive experience relative to Mr. Zweng's experience in KOD-25 (across three species), Alaska big game experience outside KOD-25 (across three species), "Other Alaska Guided Activities," and "Other Relevant Alaska Activities."[254]

The timeframe on Mr. Kronberger's table for two categories, big game guiding experience on KOD-25 and other personal or non-guiding related experience on KOD-25, is 20 years.[255] The timeframe for two other categories, guiding/outfitting experience in other areas outside of KOD-25 and other relevant

---

[252] *Nev. Land Action Ass'n v. U.S. Forest Serv.*, 8 F.3d 713, 716 (9th Cir. 1993).

[253] Docket 63 at 37 (citing Docket 18-9 at 3 (AR 001261-62)).

[254] Docket 63 at 37-38.

[255] Docket 18-7 at 45 (AR 000161) ("Guiding on the refuge Guide Use Area being offered"); Docket 18-7 at 46 (AR 000162) ("Other activities on the refuge Guide Use Area being applied for").

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 58 of 89

experiences outside of KOD-25, is 10 years before the application, "starting with January 1, 2011."[256]

One of Manager Brady's stated rationale for his decision to award the permit to Mr. Zweng was "[e]xperience and knowledge of the GUA, terrain, climate and species hunted."[257] He summarized Mr. Zweng's guiding experience as follows:

> Michael clearly has more experience on the land and waters of KOD-18 becoming the sole guide in 2014. Prior to that he was working in the adjacent State unit GUA 8-04 since 2004 spending most of his time guiding in Kiluda and Ugak Bays. He was an Assistant guide in 2005 and a Registered guide in 2010. KOD-18 has the additional complication of half the unit being on federal lands and half being on State lands which leads to competitive draws, Michael has had to deal with the intricacies of that unit. Michael also is a Site Steward with the Alutiiq Museum.[258]

Manager Brady also recognized that Mr. Kronberger "has been a guide in the unit since 2006" and, in 2016, became the sole user and Master guide of KOD-25.[259] He also states that while Mr. Kronberger "understands the intricacies being on AKI lands," "he does not have a Land Use Permit."[260] His discussion of Mr. Rydeen's

---

[256] Docket 18-7 at 47 (AR 000163) ("Guiding elsewhere"); Docket 18-7 at 48 (AR 000164) ("Other relevant activities not on the Guide Use Area you are applying for").

[257] Docket 18-9 at 4 (AR 001262).

[258] Docket 18-9 at 4 (AR 001262).

[259] Docket 18-9 at 4 (AR 001262).

[260] Docket 18-9 at 4 (AR 001262).

experience is limited to one sentence: "John started in the unit as an assistant guide in 2005 and became a registered guide in 2008."[261]

In the Kronberger Decision, Director Boario stated: "The Refuge Manager adequately considered both Mr. Kronberger's and Mr. Zweng's experience when making his decision. The Refuge Manager did not assert that Mr. Zweng has any guiding experience in KOD 25."[262] She further found that "Mr. Zweng has extensive experience guiding brown bear hunts in portions of Kodiak with climate and terrain very similar to that found in KOD-25, and that it was reasonable for the Refuge Manager to characterize Mr. Zweng's ability to provide brown bear guiding services in KOD-25 as 'highly competitive.'"[263]

As determined by Director Boario, Manager Brady appropriately considered Mr. Zweng's experience in accordance with the Prospectus and Regulations.[264] As expressly stated in Form C, experience was not limited to an applicant's experience of the specific Guide Use Area being applied for. Manager Brady provided a rational explanation: that he valued Mr. Zweng's experience in KOD-18 with its similar terrain to KOD-25, as well as his other experience, including his role

---

[261] Docket 18-9 at 4 (AR 001262).

[262] Docket 18-20 at 10 (AR 001986).

[263] Docket 18-20 at 10 (AR 001986).

[264] Docket 18-20 at 6-16 (AR 001982-92).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 60 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 60 of 89

as a site steward for the Alutiiq Museum.[265]  Although Mr. Zweng did not guide on KOD-25 specifically, it was not arbitrary for FWS to consider that "[Mr.] Zweng's proposal discussed his experience in guiding another unit on Kodiak,"[266] and the experience of assistant guides.[267]

### E.    Mr. Rydeen's experience (Form B)

The Court will also address Mr. Rydeen's argument that the Rydeen Decision contained an allegedly false statement about how Mr. Rydeen described his experience in Form B.[268]  Form B, scored out of 75 points, requests that applicants respond to eight questions relating to their ability to provide a high quality service to the public.[269]  Paragraph Five of Form B states as follows: "List the number of years and estimated number of animals of each species that you and/or your employees have taken care of (e.g., field dressed, skinned, caped, boned, butchered, etc.)."[270]

---

[265] Docket 66 at 6; Docket 18-9 at 4 (AR 001262).

[266] Docket 66 at 7 (citing Docket 19-27 at 10-26 (AR 000738-55)).

[267] Docket 18-20 at 10 (AR 00196); Docket 18-20 at 10 (AR 001986). Manager Brady also considered that all of Mr. Zweng's assistant guides have extensive experience on Kodiak Island; his lead guide lived on Kodiak for 30 years; and he and his guides guided in the KOD-18 refuge areas under a special use permit. Docket 19-27 at 10 (AR 000738).

[268] Docket 62 at 39-42. Mr. Rydeen also asserts that Director Boario falsely states that Mr. Rydeen failed to report a BLM violation from 2016. The Court addresses this issue in a subsequent section. *See infra* Section III.H.

[269] Docket 18-8 at 1 (AR 001185); Docket 18-7 at 44 (AR 000160).

[270] Docket 18-7 at 44, ¶ 5 (AR 000160).

Mr. Rydeen's response to Paragraph Five Form B lists the number of animals he has skinned-caped, and then the number of animals skinned, caped, field dressed, and butchered.[271] He stated he has skinned-caped 102 brown/grizzly bears and skinned, caped, field dressed, and butchered over 150 other animals.[272] He also lists the number of species his employees have taken care of and names Jesse Gallagher, Lance Kronberger, Kai Wolfe, Brandon Hamilton, and Shane Reynolds.[273]

In the Rydeen Decision, Director Boario states: "[A] review of Mr. Rydeen's application . . . and the larger record suggests that Mr. Rydeen may have overstated an aspect of his experience."[274] "Mr. Rydeen's application stated that he and his employees have skinned and caped 102 brown grizzly bears in the previous 22-year period" which "appears to duplicate certain information provided in Mr. Kronberger's application."[275] "The record does not contain any information suggesting that Messrs. Gallagher, Wolfe, Kronberger, Hamilton, and/or Reynolds served as employees of Mr. Rydeen, as opposed to Mr. Kronberger's application that clearly indicates that he served as the contract guide and employed all of the

[271] Docket 19-17 at 2 (AR 000510).

[272] Docket 19-17 at 2 (AR 000510).

[273] Docket 19-17 at 2-4 (AR 000510-12).

[274] Docket 18-20 at 28 (AR 002004).

[275] Docket 18-20 at 28 (AR 002004).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 62 of 89
Case 3:24-cv-00122-SLG   Document 84   Filed 03/31/26   Page 62 of 89

assistants listed."[276]  Director Boario concludes by stating that while Manager Brady's "decision memorandum for the KOD 25 selection did not address this issue, the refuge manager's omission of any discrepancy was not prejudicial" and, in reaching her Decision as to Mr. Rydeen, "it was unnecessary for me to consider the potential that Mr. Rydeen overstated the experience of his employees."[277]

Mr. Rydeen maintains that he "did not and is not taking credit for the experience other individuals as his own."[278]  Rather, he is "listing the names and guiding experience of individuals who will be his employees, and with whom he has agreements to employ as guides, if he is awarded the KOD-25 permit," which includes Mr. Kronberger.[279]

The Court finds Director Boario's conclusion that Mr. Rydeen "may have overstated an aspect of his experience"[280] may be accurate insofar as Mr. Rydeen did not make clear that the individuals he listed as employees in his application had not, in fact, been employed by him, but were instead his potential employees if he was awarded the KOD-25 permit.

---

[276] Docket 18-20 at 28 (AR 002004).

[277] Docket 18-20 at 28 (AR 002004).

[278] Docket 62 at 40.

[279] Docket 62 at 40-41.

[280] Docket 18-20 at 28 (AR 002004).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 63 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 63 of 89

But as to his own experience, Mr. Rydeen did not overstate it. Indeed, a panelist observed: "More than 100 bears skinned."[281] In contrast, Mr. Zweng stated that he had "personally processed 26 brown bears and over 30 black bears," and had also "processed over 100 ungulates for over 30 years."[282] And yet despite Mr. Rydeen's experience processing over 100 bears and over 250 animals,[283] for the most applicable scoring factor, "[p]lans, methods, provisions caring for meat, capes and hides," Mr. Zweng received 15/15, 15/15, and 14/15,[284] while Mr. Rydeen received 12/15, 13/15, and 13/15.[285] On remand, FWS shall reassess the experience of each applicant and its relevance to plans, methods, and provisions for caring for meat, capes, and hides.

### F. Diversity of species (Form C)

Mr. Zweng's KOD-25 proposal only offered guided brown bear hunts, even though the Prospectus species list identified the available game as "brown bear,

---

[281] Docket 18-8 at 52 (AR 001236).

[282] Docket 19-27 at 2 (AR 000730).

[283] Docket 19-17 at 2 (AR 000510).

[284] Docket 18-8 at 24, 30, 34 (AR 001208, 001214, 001218).

[285] Docket 18-8 at 49, 52, 56 (AR 001233, 001236, 001240). Mr. Kronberger received three scores of 15/15. Docket 18-8 at 38, 41, 44 (AR 001222, 001225, 001228).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 64 of 89
Case 3:24-cv-00122-SLG   Document 84   Filed 03/31/26   Page 64 of 89

goat, and deer."[286]  By contrast, Mr. Kronberger's and Mr. Rydeen's proposals both provide for guided hunting opportunities of all three species.[287]

Mr. Kronberger contends that FWS "failed to consider all species that may be hunted in KOD-25, contrary to refuge purposes, goals, and law."[288]  APHA asserts the decision to award the permit to Mr. Zweng limits public access—specifically for families and youth—because bear hunts cost over $30,000, while deer and goat hunts are significantly more affordable.[289]  "FWS as the steward of these lands must consider the statutes that define the public interest."[290]  APHA adds that "[t]here is a procedural angle to these substantive concerns": "The fact that Zweng proposed to provide only part of the hunting guide service offered in the Prospectus . . . did not become known to Plaintiffs Kronberger and Rydeen until well after Regional Director Boario had affirmed Refuge Manager Brady's award of the permit to Zweng."[291]

---

[286] Docket 67-1 at 6 (citing Docket 18-11 at 18 (AR 001432)); Docket 19-25 at 2-3 (AR 000679-80); *see* Docket 18-7 at 29 (AR 000145) (listing "Species Available" as "All big game species available under Alaska sport hunting regulations (this includes brown bear and deer).").

[287] Docket 19-1 at 20 (AR 000204) (Kronberger species hunted); Docket 19-16 at 25 (AR 000500) (Rydeen species hunted).

[288] Docket 63 at 39-41.

[289] Docket 67-1 at 6-7.

[290] Docket 67-1 at 7.

[291] Docket 67-1 at 8.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 65 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 65 of 89

Defendants are correct in their opposition brief that there is "no legal requirement the permit holder offer big game guides for all species available on KOD-25."[292]  Nonetheless, the Court agrees with APHA that FWS did not acknowledge in its decision that it was awarding the exclusive guide permit to the applicant who would provide only part of the hunting guide services included in the Prospectus, and hence provided no rational explanation for this decision. The refuge manager's determination that Mr. Zweng is "highly competitive with his ability to provide high quality guiding service" that Director Boario affirmed is hard to square with the fact that Mr. Zweng proposed to offer guiding services for only one of the three species listed in the Prospectus and should be reconsidered on remand.

### G.    Mr. Zweng's experience (Form C)

Form C evaluated an applicant's "[d]emonstrated experience and knowledge of the guide use area, and the terrain, climate, and species to be hunted."[293]

Mr. Kronberger contends that FWS "arbitrarily and capriciously based its decision to award [Mr. Zweng] the permit on his experience" because the agency "unfairly and improperly considered Mr. Zweng's experience outside the

---

[292] Docket 66 at 28.

[293] Docket 18-7 at 36 (AR 000152); Docket 18-7 at 45-49 (AR 000161-65). *See supra* Section III.C.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 66 of 89

Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 66 of 89

Prospectus time limits."[294]  All three panelists awarded Mr. Zweng 15/15 points on the factor for "[o]ther relevant activities not on the guide use area during the last ten years."[295]  One scoring panelist wrote that Mr. Zweng had "extensive experience hunting target and other species in Alaska and other states."[296]  Mr. Rydeen maintains this conclusion is "false" because nowhere on Mr. Zweng's application "does he suggest that he has any personal hunting experience in Alaska."[297]  Mr. Zweng's application states he has "extensive outdoor hunting/guiding experience in Michigan," where he is domiciled, and which he indicated consists mostly of "personal deer hunting."[298]  The Brady Decision references Mr. Zweng's experience in state unit GUA 8-04 "since 2004," even though for an area outside of KOD-25 such as GUA 8-04, the Prospectus time frame limited the scorer's consideration of that experience to 10 years, starting with January 1, 2011.[299]

---

[294] Docket 63 at 41-42.

[295] Docket 18-8 at 25, 31, 35 (AR001209, 001215, 001219).

[296] Docket 18-8 at 25 (AR 001209).

[297] Docket 62 at 59 (citing Docket 19-27 at 23-26 (AR 000751-54).

[298] Docket 19-27 at 22-26 (AR 000750-54). Mr. Zweng's guiding experience in Michigan is for deer and turkey, which are not relevant species for his KOD-25 proposal. Docket 19-27 at 17-20 (AR 000745-48). And yet, one scoring panelist wrote Mr. Zweng had demonstrated "extensive bear hunt guiding in Michigan." Docket 18-8 at 25 (AR 001209).

[299] Docket 18-9 at 4 (AR 001262). *See also* Docket 63 at 42; Docket 62 at 58.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 67 of 89
Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 67 of 89

Mr. Kronberger asserts that "[t]he Brady Decision never acknowledged or discussed the fact Mr. Zweng has zero experience in KOD-25 and has never set foot in that guide use area, and it never discussed the impact of that fact."[300]    Mr. Rydeen similarly contends that while the Brady Decision emphasizes Mr. Zweng's experience in KOD-18, Manager Brady makes no mention of why Mr. Zweng's experience in that unit is more relevant than Mr. Rydeen's experience in KOD-25 itself, as well as in KOD-16, KOD-08 and KOD-04.[301]

Lastly, Mr. Rydeen also asserts that one panel member's conclusion that he has "no hunting or wildlife viewing experience" is "patently false" and resulted in him receiving only 3 out of 15 points from that scorer solely for sport fishing.[302] The Court agrees that this appears to be a scoring error by that panelist.

Director Boario found that Manager Brady "did not err by considering available information concerning Mr. Zweng's relevant experience outside the ten-year period considered by the ranking panel."[303]    Mr. Kronberger contends that "even if FWS could consider that information," then FWS should consider the same

---

[300] Docket 63 at 44.

[301] Docket 62 at 58.

[302] Docket 62 at 58-59 (first citing Docket 18-8 at 53 (AR 001237); and then citing Docket 19-18 at 9 (AR 000554)).

[303] Docket 18-20 at 11 (AR 001987).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 68 of 89
Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 68 of 89

information for other applicants, like himself, since he too "had significant experience hunting and guiding 'elsewhere' than KOD-25 prior to 2011."[304]

As noted above, in both of her Decisions, Director Boario stated that she found "no evidence that the panel scores in the KOD 25 selection process were erroneous or unreasonable, and no evidence that the Refuge Manager unduly relied on erroneous or unreasonable panel scores when selecting Mr. Zweng."[305] But Plaintiffs have persuasively demonstrated that the above described errors were made by the scorers and adopted by Director Boario, and thus, the Kronberger and the Rydeen Decisions are both arbitrary and capricious. Further, the Court agrees with Mr. Kronberger's assertion that if FWS considers experience outside the time limitations set forth in the Prospectus for one applicant, it should do so for the other applicants as well.

## H. 2016 BLM Notice (Form E)

Form E directs the applicant to list all violations associated with guiding, hunting, or fishing since January 1, 2011, including all such violations by the applicant's business partners, employees, contractors, and clients.[306] In Form E

---

[304] Docket 63 at 42. *See also* Docket 62 at 58 ("Of course, Mr. Rydeen has significant experience beyond the ten-year time period allowed in Form C(3), but he did not list that information because the Prospectus expressly limits such experience to begin on January 1, 2011.").

[305] Docket 18-20 at 15 (AR 001991); Docket 18-20 at 33 (AR 002009).

[306] Docket 18-7 at 51-53 (AR 000167-69) (Form E); Docket 18-8 at 16 (AR 001200) ("Consider the compliance history or record of the applicant, and the applicant's business partners and employees. Treat or score violations or compliance problems of partners and employees the

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 69 of 89

of Mr. Kronberger's application,[307] Mr. Kronberger reported that in August 2016, he received a "Notice of Non-Compliance/Permit on Probation" from the BLM for allegedly violating a BLM land use permit that he then held.[308]

The Notice stated that "it appeared that [Mr. Kronberger] was in Violation" when he was guiding a moose hunt on BLM land that was closed for moose hunting for non-subsistence purposes.[309] Mr. Kronberger asserts that he, and the BLM as well, were unaware that this land was open to only qualified federal subsistence users.[310] He maintains he "was never given an opportunity to defend" himself and was "not given a violation."[311] Mr. Kronberger also adds the following explanation: "After an in-depth discussion with my BLM Field Manager[,] he explained that the

same as for the applicant. Also consider all law enforcement violations or other compliance problems associated with the applicant's guiding operations, even if the applicant was not directly involved." (emphasis omitted)).

[307] Docket 19-10 at 10-12 (AR 000371-84) (Mr. Kronberger's Form E disclosures).

[308] Docket 18-9 at 16-17 (AR 001901-02); Docket 19-10 at 10 (AR 000371). The BLM Notice stated: "It appears your clients' harvest of moose in the Ungalik, Shaktoolik, and Kingmetolik drainages occurred on unencumbered federal lands. . . . [A]ny harvest of moose in GMU 22A on unencumbered federal lands is not allowed under federal subsistence regulations except by qualified federal subsistence users." Docket 18-19 at 16 (AR 001901).

Mr. Kronberger cites to Director Boario's Decision for the proposition that the Notice "was not an appealable decision to [the Interior Board of Land Appeals]." Docket 63 at 47 (citing Docket 18-20 at 22 (AR 001998)). The Court does not see any reference to the Interior Board of Land Appeals at AR 001998.

[309] Docket 19-10 at 10 (AR 000371).

[310] Docket 19-10 at 10 (AR 000371); Docket 18-19 at 16 (AR 001901). *See also* Docket 18-9 at 4 (AR 001262) ("Lance has a violation in 2016 for taking a Moose in a subsistence unit. Lance said he was never notified and continued to be issued a permit from BLM.").

[311] Docket 19-10 at 10 (AR 000371).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 70 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 70 of 89

one-year probation was not a big deal and that to just stop moose hunting on unencumbered lands and get this formality behind us."[312] The parties appear to agree that the scorers deducted two points for this notice.[313]

### i. Mr. Kronberger

Mr. Kronberger contends that the 2016 BLM Notice "cannot be a chargeable 'administrative penalty'" because "BLM did not give Mr. Kronberger an opportunity to contest or appeal the imposition of probation" and therefore, Mr. Kronberger should not have received a 2-point deduction for it."[314]

On March 18, 2024, Thomas Sparks, a BLM Associate Field Manager, notified FWS that BLM "did not send an [*sic*] appeal language on the probation letter as it was not an appealable decision to IBLA."[315] Yet in the Kronberger Decision, which was decided two-days later on March 20, 2024, Director Boario states: "Mr. Kronberger had ample opportunity to object [*sic*] the BLM Notice of Non-Compliance with BLM when issued in 2016 if he believed that BLM made an error."[316]

---

[312] Docket 19-10 at 10 (AR 000371). Because of that incident, his special recreation permit was put on probation for one year.

[313] *See also* Docket 18-8 at 40, 42, 46 (AR 001224, 001226, 001230).

[314] Docket 63 at 46-47.

[315] Docket 18-19 at 13 (AR 001898).

[316] Docket 18-20 at 12 (AR 001988).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 71 of 89

Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 71 of 89

Defendants maintain that the Refuge Manger properly considered the BLM Notice and the "facts in the record make clear that an unlawful harvest of two moose occurred and easily surpass the preponderance of the evidence standard applicable in this administrative context."[317]  In his reply, Mr. Kronberger asserts that FWS's "preponderance of the evidence" standard is inapplicable and that "FWS is attempting to orally convict Kronberger."[318]

Specific to the BLM incident, Manager Brady states: "Lance has a violation in 2016 for taking a Moose in a subsistence unit."[319]   Director Boario maintains that Manager Brady did not err in considering the BLM Notice.[320]  She states, "[t]he taking of not one but two moose in a closed subsistence area is a serious offense" that was appropriate for Manager Brady to consider.[321]

The Court questions Director Boario's determination that the BLM Notice constituted a "serious offense" when BLM did not formally issue a violation or charge Mr. Kronberger or give him an opportunity to contest the notice.  The BLM's

---

[317] Docket 66 at 29.

[318] Docket 76 at 32.

[319] Docket 18-9 at 4 (AR 001262).

[320] Docket 18-20 at 13 (AR 001989); *see* Docket 18-20 at 13 (AR 001989) ("Even though a criminal citation was not issued by law enforcement, this does not mean the illegal harvests of two moose were not hunting violations under state or federal law. The facts above show that Mr. Kronberger's non-resident hunters harvested moose in areas closed to such harvest.").

[321] Docket 18-20 at 13 (AR 001989) ("It is appropriate that the Refuge Manager considered these hunting violations which occurred on other Federal lands in his selection decision.").

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 72 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 72 of 89

2016 Notice did not constitute a finding of a violation—BLM only stated that it "appeared to be a violation" and did not accord Mr. Kronberger an opportunity to contest that finding. In deciding the competitive award of the hunting guide permit for KOD-25, the Notice should not have been used against Mr. Kronberger.[322]

The instructions for Form E asks if an applicant to report if he has "[b]een administratively penalized for violation of any federal regulations or special use permit condition while operating or being associated with a business holding a special use permit.[323] Because Mr. Kronberger was never found to have committed a violation,[324] the panelists' point deductions for the BLM 2016 Notice were in error. Further, Director Boario's adoption of the panel's deductions was arbitrary and capricious.[325]

### ii. Mr. Rydeen

In the Rydeen Decision, Director Boario conducted supplemental research. Based upon her "review of the record supporting the refuge manager's decision and supplemental information compiled by my staff," she "observed some

---

[322] *See also* Docket 67-1 at 14-15 (citing Docket at 18-6 at 30 (AR 000114 ("You can review the Alaska court system data management system prior to making your selection to ensure that all violations have been correctly reported by the applicant, and to become aware of any new incidents that have occurred since the application were submitted. However, only documented convictions can be considered in making selection decisions."))).

[323] Docket 18-7 at 51 (AR 000167).

[324] Docket 19-10 at 10 (AR 000371).

[325] *See* Docket 18-20 at 12-14 (AR 001988-90).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 73 of 89
Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 73 of 89

information relevant to Mr. Rydeen's violation history."[326] She also received information from Mr. Zweng that Mr. Rydeen was a 1% shareholder of Mr. Kronberger's LLC.[327] She states that Mr. Rydeen should have answered Form E's Question 3 in the affirmative and provided information regarding the moose taken in closed subsistence area that resulted in BLM's issuance of the 2016 Notice by him.[328]

In response to Director Boario's contention that Mr. Rydeen was required to report this incident, he asserts that since "he was not required to be involved and was not involved with the operations of the company itself like partnerships, he therefore cannot be considered a 'business partner' under Form E."[329]  The Court need not reach this issue because it was error for FWS to consider the BLM Notice as to Mr. Kronberger when there had been no finding of a violation.

### I.    Triple penalty for violations

Mr. Kronberger's next argument is that "FWS acted arbitrarily and capriciously when it triple penalized Mr. Kronberger for his alleged violations."[330]

---

[326] Docket 18-20 at 20 (AR 002006).

[327] Docket 18-19 at 55 (AR 001940); Docket 18-17 at 23 (AR 001757). Once Mr. Zweng had access to the first appeal, on August 21, 2023, Mr. Zweng, as the selected applicant, emailed shared information to Director Boario and FWS on August 28, 2023, and on September 25, 2023.

[328] Docket 18-20 at 30.

[329] Docket 62 at 38-39.

[330] Docket 63 at 50. *See also* Docket 76 at 33-34 ("[FWS] considered Kronberger's alleged violations under more than one of the five Prospectus criteria, thus triple penalizing him for any

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 74 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 74 of 89

Mr. Kronberger contends that "instead of considering compliance issues only under Form E, FWS *also* considered them under Form B (ability to provide a high-quality guide service) and Form D (safety), resulting in a triple penalty."[331] "Where FWS considered Mr. Kronberger's history of compliance in connection with three separate criteria, it triple penalized Mr. Kronberger, contrary to both the Prospectus and its own Selection Guidelines, essentially resulting in a decision based solely on one criterion—history of compliance."[332]

In addition to the BLM'S 2016 Notice, discussed above, Mr. Kronberger's Form E includes other self-reported incidents. Mr. Kronberger's second reported violation was in May 2016 involving two of his assistant guides: Mike Letourneau and Justin Hedgecock.[333] While attempting to finish off a mortally wounded bear, the guides inadvertently mortally wounded a different bear, this time, a cub.[334] The incident led to a $1,300 restitution judgment.[335] Mr. Kronberger also reports a September 2015 incident, when a client accidently shoot two moose.[336]

---

compliance issues, which are supposed to be addressed only under Form E.").

[331] Docket 63 at 50 (emphasis in original); Docket 18-20 at 9 (AR 001985).

[332] Docket 63 at 51.

[333] Docket 19-10 at 12 (AR 000373). *See also* Docket 18-9 at 4 (AR 001262) ("In 2016 two guides, working for Lance, shot an additional bear when trying to retrieve the original bear.").

[334] Docket 19-10 at 12 (AR 000373).

[335] Docket 19-10 at 13 (AR 000374).

[336] Docket 19-10 at 14 (AR 000375). *See also* Docket 18-9 at 4 (AR 001262) ("In 2015 a client for Lance shot a second moose, when trying to put down the original wounded moose.").

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 75 of 89
Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 75 of 89

Mr. Kronberger points to Manager Brady's decision, which references Mr. Kronberger's violations under the "Ability to provide a high quality guiding service" Section of his memorandum, and also discussions Mr. Kronberger's violations under a combined heading addressing both safety and violations (Forms D + E).[337] Director Boario, in her Kronberger Decision, found "no evidence that the Refuge Manager triple penalized" Mr. Kronberger for the alleged violations."[338] She explained that she found Manager Brady's evaluation of the violations in the context of the applicant's ability to provide a high quality guiding service "to be reasonable."[339]

In his memorandum, Manager Brady appeared to consolidate his third and fourth rationales for selection by addressing Form D (Safety) and Form E (Compliance) together.[340] Here, Manager Brady summarizes the three violations relating to Mr. Kronberger.[341] The Court does not find Director Boario's reasoning upholding the Brady Decision on this issue to be arbitrary or capricious. Director

---

[337] Docket 63 at 50 n.64.

[338] Docket 18-20 at 9 (AR 001985).

[339] Docket 18-20 at 9 (AR 001985).

[340] Docket 18-9 at 4 (AR 001262).

[341] Docket 18-9 at 4 (AR 001262) ("Lance has a violation in 2016 for taking a Moose in a subsistence unit. Lance said he was never notified and continued to be issued a permit from BLM. In 2016 two guides, working for Lance, shot an additional bear when trying to retrieve the original bear. In 2015 a client for Lance shot a second moose, when trying to put down the original wounded moose. In 2019 a guide for Lance had an accident when trying to dispatch a wounded bear and was attacked and broke a pinky and had flesh wounds.").

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 76 of 89
Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 76 of 89

Boario provided a reasoned explanation as to how certain past violations could have significance in assessing an applicant's ability to provide a high-quality guiding service. Indeed, it would be unreasonable to require FWS to categorically exclude any consideration of an applicant's violation that had relevance to the other selection factors.

### J.    Third-party violations (Form E)

In September 2015, one of Mr. Kronberger's guides was involved with an incident during which one of Mr. Kronberger's clients accidentally shot a second bull moose while attempting to fire a final shot into a mortally wounded moose.[342] Mr. Kronberger's guide immediately contacted Mr. Kronberger, and Mr. Kronberger reported the incident to the Alaska State Troopers.[343]  The taking of the second moose was a strict liability violation, and the client was issued a non-criminal violation, which Mr. Kronberger characterizes as "the same level as a traffic ticket."[344]  Even though only Mr. Kronberger's client was issued the $500 fine,[345] it appears that all three scoring panelists deducted points from Mr. Kronberger's Form E for this violation, with at least one panelist deducting 20

---

[342] Docket 19-10 at 14 (AR 000375).

[343] Docket 19-10 at 14 (AR 000375); *see also* Docket 19-10 at 14 (AR 000375) ("We had a lot of discussion with our guides on how to try and keep these things from happening. This was tough as we are trying to control other humans, which we cannot control.").

[344] Docket 19-10 at 14 (AR 000375).

[345] Docket 19-10 at 15 (AR 000375).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 77 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 77 of 89

points.[346]  Under the scoring guidelines, the maximum number of points for a conviction in which the individual was fined less than $1,000 is 20 points if the violation occurred within the last 5 years, and 10 points if the violation was more than 5 years ago.[347]

According to Mr. Kronberger, "FWS misapplied Alaska law and its own guidelines to hold Mr. Kronberger *personally* responsible for his client's violation and deduct 20 points from his score."[348]  Mr. Kronberger avers that "FWS blatantly misapplied the law" because (1) "a client is not an employee of the guide" and (2) "a client also is not an employee or contractor that was delegated certain guide services (such as packing meat, trophies, or camping equipment) under AS 08.54.635."[349]  Mr. Kronberger also maintains that FWS's own scoring guidance "does not allow Mr. Kronberger to be charged with his client's hunting violations."[350]

The Kronberger Decision cites Alaska Statute § 08.54.740.[351]  AS § 08.54.740(a) provides:

> A registered guide-outfitter who contracts to guide or outfit a big game hunt is equally responsible under AS 08.54.710 for a violation of a state or federal wildlife or game or guiding statute or regulation

---

[346] Docket 18-8 at 40, 42, 46 (AR 001224, 001226, 001230).

[347] Docket 18-8 (AR 001201).

[348] Docket 63 at 52 (citing AR 001988) (emphasis in original).

[349] Docket 63 at 52-53.

[350] Docket 63 at 52 (citing AR 001200).

[351] Docket 18-20 (AR 001988).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 78 of 89

Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 78 of 89

> committed by a person while the person provides guide services for the guide-outfitter under AS 08.54.635 or during the course of the person's employment for the registered guide-outfitter.

The Court agrees with Mr. Kronberger that he is not responsible for his client's violation under that Alaska law, and it was error for Director Boario to rely on this law with respect to the client shooting the second moose.

But there was also the $1,350 fine assessed against Mr. Kronberger's assistant guides involving the May 2016 shooting of the bear cub, to which § 08.54.740 may be applicable. In a footnote, APHA explains as follows:

> Because it cannot be determined from the record how much this incident, as opposed to the client incidents, were weighed against Kronberger by Brady and Boario, AR001262 and 1985, the permit award could not be sustained on this record on a theory that assistant guides are different from clients and that guides are strictly responsible for the actions of assistant guides. *See* AS 08.54.740. Even if strict responsibility for assistant guide actions exist, there may be applicable defenses. The guide is due notice and the chance to defend.[352]

Further, the Court finds that FWS's selection guidelines are ambiguous about when a client's violation will be counted against an applicant for a permit. Director Boario adopted the scoring panelist's deductions for Mr. Kronberger's violations,[353] but it is unclear how those deductions were made for two out of the

---

[352] Docket 67-1 at 16 n.27.

[353] *See* Docket 18-20 at 13 (AR 001989).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 79 of 89

Case 3:24-cv-00122-SLG   Document 84   Filed 03/31/26   Page 79 of 89

three panelists.[354]  On remand, FWS must explain how it considered each of the incidents that Mr. Kronberger identified in his application in its selection decision.

Further, while it may be appropriate for FWS to consider client violations when assessing a guide's application, deducting 20 points, as at least one of the panelists did, for such a violation on Form E, when there has been no conviction of the guide based on the client's conduct would be arbitrary and capricious.[355] This 20 point deduction is equal to, or potentially greater than the 10 to 20 point deduction an applicant would receive if that applicant himself had been convicted of a misdemeanor crime within the last five years.[356]  Yet still, Director Boario adopted this scoring: "It was appropriate that the ranking panel deducted points from Mr. Kronberger's score for these violations, and it was appropriate that the Refuge Manager considered these violations in his selection decision for KOD 25."[357]

### K. Exclusive native land use permit (Forms A and B)

Mr. Kronberger's next argument asserts that "FWS acted arbitrarily and capriciously when it found that Mr. Kronberger's authorization to hunt on Native lands within KOD-25 was 'not germane,'" and that Director Boario "showed bias

---

[354] Docket 18-8 at 40, 42, 46 (AR 001224, 001226, 001230).

[355] *See* Docket 18-7 at 52 (AR 000168).

[356] Docket 18-8 at 17 (AR 001201).

[357] *See* Docket 18-20 at 13 (AR 001989).

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 80 of 89

Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 80 of 89

when [she] suggested that Mr. Kronberger was acting inappropriately by having such a land use agreement."[358]   Defendants do not address the Native lands authorization in their opposition brief.

As an initial matter, Director Boario acknowledged that Manager Brady erroneously stated that Mr. Kronberger did not have authorization to hunt on Native lands within KOD-25.[359]  In Mr. Kronberger's Form A, Mr. Kronberger states that he has "a sole use long-term lease to hunt" on all Athiok – Kaguyak Inc. ("AKI") lands, which are Native lands "located in Kaguyak Bay, Jap Bay, and Old Kaguyak Bay" and is the "the only permitted user on these lands" within KOD-25.[360]  Mr. Kronberger references AKI lands throughout his application.[361]  For example, two of Mr. Kronberger's five spike camps are within AKI lands.[362] However, Director Boario determined that Manager Brady's error was harmless, because "[w]hether or not Mr. Kronberger has authorization (or exclusive authorization, for that matter) to guide on AKI lands in the future was not germane to evaluating the extent of Mr. Kronberger's past experience, Mr. Kronberger's ability to provide high-quality

---

[358] Docket 63 at 53.

[359] Docket 18-20 at 14 (AR 001987).

[360] Docket 19-2 at 6 (AR 000225).

[361] *See* Docket 19-11 at 17, 21, 34 (AR 000201, 000205, 000218); Docket 19-2 at 6, 35 (AR 000225, 000279).

[362] Docket 19-1 at 20 (AR 000204). Given the frequency that "AKI" is mentioned, particularly on all of Mr. Kronberger's maps, the Court finds it surprising for Manager Brady to conclude that Mr. Kronberger does not have authorization to hunt on AKI lands.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 81 of 89

Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 81 of 89

guiding services, or other factors relevant to the Refuge Manager's decision."[363] While Mr. Kronberger's Native lands permit may not be "germane" to Form C, it would appear to "positively affect[] his operations plan" (Form A) and "give[] him an advantage in providing a high-quality guide service" (Form B).[364]

FWS should have considered Mr. Kronberger's exclusive right to hunt on Native lands within KOD-25 when evaluating his application,[365] and its failure to do so is arbitrary and capricious.

### L. The Panel's scoring errors

Mr. Kronberger contends that "the scoring panel made significant scoring errors that erroneously gave Mr. Zweng the highest score."[366] And because "the Brady decision seems to indicate that the refuge manager chose Mr. Zweng because he had the highest score given by the ranking panel," "[w]hen those errors are corrected, Mr. Kronberger is the highest scoring applicant by a significant amount" and should have been chosen as the KOD-25 permit recipient.[367] Mr.

---

[363] Docket 18-20 at 11 (AR 001987).

[364] Docket 63 at 54.

[365] *See* Docket 76 at 20.

[366] Docket 63 at 56.

[367] Docket 63 at 55-56.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 82 of 89
Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 82 of 89

Kronberger further asserts that Director Boario's "conclusion that 'all scores applied were appropriate,' is objectively wrong."[368]

Mr. Kronberger requests that 20 points be added to his score because 20 points were deducted from his score based on his client's 2015 violation for inadvertently shooting two moose.[369] As set forth above in the Court's analysis of this issue, the Court agrees that this 20 point deduction by at least one of the scoring panelists and the Regional Director's adoption of that score is erroneous and must be reconsidered.[370]

Mr. Kronberger asserts that five points must be added back in the "Demonstrated knowledge special resource value" category.[371] The Court agrees with Mr. Kronberger that the Prospectus does not set forth special land categories for KOD-25 and thus, all three finalists should have received the same score for this factor.[372] It was clearly erroneous to award Mr. Kronberger five fewer points than the other two applicants for this factor.

---

[368] Docket 63 at 56.

[369] Docket 63 at 56-57.

[370] *See supra* Section III.J.

[371] Docket 63 at 58-59. Mr. Zweng received 15/15 from his three panelists. Docket 18-8 at 23, 29, 33 (AR 001207, 001213, 001217). Mr. Rydeen also received 15/15 from his three panelists. Docket 18-8 at 48, 51, 55 (AR 001232, 001235, 001239). In contrast, Mr. Kronberger received 10/15 from all three panelists. Docket 18-8 at 37, 41, 43 (AR 001221, 001225, 001227).

[372] Docket 63 at 58-59.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 83 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 83 of 89

Mr. Kronberger requests that two points must be added to his score because he received the two-point deduction for the BLM Notice.[373]  For the reasons set forth above discussing the BLM Notice, the Court agrees with Mr. Kronberger that those two points were improperly deducted from his score.[374]

Mr. Kronberger requests that Mr. Zweng's score "must be reduced by at least 5 points."[375]  Mr. Kronberger aptly observes that "[w]hile the scores are only one factor for FWS to consider, it is 'even more important' for FWS to provide 'a very careful, solid and thorough documentation of the rationale' for picking a lower scoring applicant."[376]  Here, the Court agrees that some reduction in Mr. Zweng's score, particularly in light of the mobile spike camp issue, as discussed above, is warranted.[377]

## M.    Client reviews (Form F)

Form F requires applicants to "[p]rovide a complete list of all big game hunting clients that you have contracted and/or personally guided since January 1, 2011."[378]  Form F is not scored by a panel; rather, it is reviewed by the refuge

---

[373] Docket 63 at 59.

[374] *See supra* Section III.H.

[375] Docket 63 at 60.

[376] Docket 63 at 63 (quoting AR 000115).

[377] *See supra* Section II.A.

[378] Docket 18-7 at 54 (AR 000170) ("Evaluation of Client References").

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 84 of 89

Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 84 of 89

manager if the panel referred the applicant for refuge manager review.[379]  Refuge managers are instructed that they "should" consider clients reviews.[380]

Mr. Rydeen asserts that Manager Brady's decision highlighted Mr. Zweng's positive client recommendations based on Form F but does not discuss Mr. Rydeen's positive client references.[381]  Director Boario acknowledges this was an "oversight" by Manager Brady.[382]  However, she states that "even after taking into account Mr. Rydeen's client references, which I confirmed to be positive[,]" she does not find that Manager Brady's lack of discussion of Mr. Rydeen's Form F to serve as a basis for permit invalidation.

However, the Court agrees with Mr. Rydeen that FWS did not articulate the requisite "rational connection between the facts found and the choice made."[383]  Manager Brady's cursory and incomplete consideration of Form F was not well justified as it was limited to one applicant despite the guidelines stating that "[t]he refuge manager will base his/her final selection on . . . client references."[384]  Unlike

---

[379] Docket 18-8 at 2 (AR 001186).

[380] Docket 18-8 at 19-21 (AR 001203-05) ("General Information/Resources" Letter).

[381] Docket 62 at 61; *see also* Docket 18-17 at 6 (AR 000170).

[382] Docket 18-20 at 28 (AR 002004) ("I do not find this omission [*sic*] sufficient reason to reverse or modify the refuge manager's decision, however.  Refuge manager decision memoranda need not specifically discuss each component of each application.  And there is no reason to believe that this omission infers that the refuge manager construed Mr. Rydeen's references as negative or as a factor that detracted from Mr. Rydeen's application.").

[383] *Yerger v. Robertson*, 981 F.2d 460, 463 (9th Cir. 1992).

[384] *See* Docket 18-8 at 16-18 (AR 0001200-02)?? ("The refuge manager will base his/her final

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 85 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 85 of 89

the aforementioned Alexander Decision, the Brady Decision does not mention Mr. Rydeen or Mr. Kronberger's Form F, and even Director Boario's decision merely confirms that Mr. Rydeen's Form F was positive.[385] FWS's inadequate discussion of each finalist's client reviews was arbitrary and capricious.

## IV.    Panel membership

In a footnote in his opening brief, Mr. Kronberger asserts that the panel review process is arbitrary because FWS used "different panels to score different applicants for the same area."[386]  In his reply, Mr. Kronberger observes that "FWS did not deny that different panels scored Zweng's, Kronberger's, and Rydeen's applications, thus implicitly conceding that point."[387] "Using different panels to score different applicants for the same area is an arbitrary process that does not treat each applicant equally, given that different scorers may have different views and different understandings of the criteria."[388]

---

selection on the results of the ranking panel evaluations, the manager's own examination of the applications, interviews of the applicants, client references, and other records or sources of information (e.g., permit files) that can document the applicant's performance and qualifications."). *See also* AR 000115.

[385] Docket 18-15 at 50 (AR 001644); Docket 18-20 at 29 (AR 002005).

[386] Docket 63 at 12 n.1.

[387] Docket 76 at 13 (citing Docket 63 at 2 n.1). Throughout his opening brief, Mr. Rydeen refers to the panel as "the secret panel." Docket 62 at 7-8, 10, 46, 49, 58.

[388] Docket 76 at 13.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 86 of 89
Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 86 of 89

It is not clear from the current record whether each applicant was scored by the same panel.  This topic can be addressed in further proceedings.

## V.  Determining the Remedy

Plaintiffs both request that the Court disqualify Mr. Zweng's application and remand the matter to FWS to determine whether the permit should be awarded to Mr. Kronberger or to Mr. Rydeen.[389] As discussed above, the Court will not disqualify the application of Mr.  Zweng.

In the alternative, Mr. Rydeen requests the Court "to order that the final agency action of FWS be reversed and that Mr. Zweng's application be declared not 'best qualified' for consideration of the KOD-25 permit, with an award of the KOD-25 permit to be decided between Mr. Rydeen and Mr. Kronberger."[390] Alternatively, if the Court remands to the agency, Mr. Rydeen requests the Court disqualify the Refuge Manager and Regional Director from involvement in the award of the permit.[391]

FWS requests that the Court affirm Director Boario's March 20, 2024 and April 12, 2024 Final Decisions.[392] FWS does not address what remedy is appropriate in the event that the Court finds any legal error.

---

[389] Docket 62 at 63; Docket 63 at 63.

[390] Docket 62 at 33-34.

[391] Docket 62 at 33-34.

[392] Docket 66 at 32.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 87 of 89

Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 87 of 89

The Court's previous order on the motion to strike stated: "[I]n the event that the Court finds a remand is warranted, it will first accord all parties an opportunity to file supplemental briefing with regard to the scope of the remand."[393]  Having found that certain agency actions were arbitrary and capricious, the Court will permit the parties to file supplemental briefs to determine the scope of remand.

In light of the foregoing, each party may file a supplemental brief addressing the appropriate remedy in this case within 21 days of the date of this order.

## CONCLUSION

For the aforementioned reasons, Director Boario's March 20, 2024 and April 12, 2024 Final Decisions affirming Manager Brady's selection of Mr. Zweng as the recipient of the Big Game Guide permit for KOD-25 contain determinations that are arbitrary and capricious in violation of the APA.  In light of the foregoing, IT IS ORDERED THAT:

1.    The relief requested in Plaintiff John Rydeen's Opening Brief at Docket 62 is **GRANTED IN PART and DENIED IN PART** as set forth herein;

2.    The relief requested in Plaintiff Lance Kronberger's Opening Brief at Docket 63 is **GRANTED IN PART and DENIED IN PART** as set forth herein; and

3.    **Within 21 days of the date of this order,** each party may file and serve a supplemental brief on the appropriate remedy in this case.  Each Plaintiff's

---

[393] Docket 83 at 4.

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 88 of 89

Case 3:24-cv-00122-SLG    Document 84    Filed 03/31/26    Page 88 of 89

supplemental brief shall not exceed 10 pages.  Defendants' supplemental brief shall not exceed 15 pages.

DATED this 31st day of March 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:24-cv-00122-SLG, *Kronberger v. U.S. Fish & Wildlife Serv., et al.*
(Lead Case) (Consolidated)
Decision and Order
Page 89 of 89

Case 3:24-cv-00122-SLG     Document 84     Filed 03/31/26     Page 89 of 89